Filed 9/27/13 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

**PARAIC O'DONOGHUE et al.,**

    **Petitioners,**

    **v.**

**SUPERIOR COURT OF THE COUNTY
OF SAN FRANCISCO,**

    **Respondent,**

**PERFORMING ARTS, LLC,**

    **Real Party in Interest.**
_____/

**A137996**

**(San Francisco City & County
Super. Ct. No. CGC09494591)**

ORDER MODIFYING OPINION AND DENYING
PETITION FOR REHEARING

THE COURT:

    The opinion filed on August 29, 2013, is modified as follows:

    On page 3, paragraph two, first sentence, delete the word "defendants" and replace with "Market Associates"

    On page 9, third paragraph, the citation to *Greenbriar Homes Communities, Inc. v. Superior Court* should read: (2004) 117 Cal.App.4th 337, 344

1

On page 11, the first full paragraph, line 5, the sentence should read: "We reject defendants' claim that paragraph 5.11 does not waive their right to a jury trial because it does not contain explicit language regarding such waiver."

The petition for rehearing is denied.

This modification does not change the judgment.

Dated _____                                    _____ P.J.


A137996

Filed 8/29/13 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

**PARAIC O'DONOGHUE et al.,**

    **Petitioners,**

    **v.**

**THE SUPERIOR COURT OF THE COUNTY
OF SAN FRANCISCO,**

    **Respondent,**

**PERFORMING ARTS, LLC,**

    **Real Party in Interest.**

_____/

**A137996**

**(San Francisco City & County
Super. Ct. No. CGC09494591)**

      In a commercial real estate transaction, Paraic O'Donoghue, Tony Manning, Enda G. Quigley, Sean Murphy, Daniel Walsh, and Christopher Flood (collectively defendants) each signed a separate personal continuing guaranty in favor of a lender.  The guaranty agreements (agreements) contained a provision authorizing dispute resolution through judicial reference.  (Code Civ. Proc., § 638.)[1]  In its action to enforce the agreements, Performing Arts, LLC (plaintiff) moved for appointment of a referee pursuant to the judicial reference provision (provision or reference provision) in the agreements; the trial court granted the motion and appointed a referee.

---

      [1]  Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

1

Defendants seek writ relief from the order granting plaintiff's motion to compel judicial reference. They argue: (1) the reference provision does not waive their right to a jury trial because they did not have "actual notice of, and did not engage in meaningful reflection before agreeing to, the purported waiver;" (2) the reference provision is unconscionable, and therefore unenforceable; (3) plaintiff waived its right to reference; and (4) the court abused its discretion by granting the reference motion because reference will result in a duplication of effort and will create a likelihood "of conflicting rulings on a common issue of law or fact." (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 (*Tarrant Bell*).)

Drawing on cases analyzing contractual arbitration provisions authorized under section 1280 et. seq, we conclude plaintiff did not waive its right to judicial reference. We reject defendants' remaining arguments and accordingly deny the petition for writ of mandate/prohibition.

FACTUAL AND PROCEDURAL BACKGROUND

This litigation concerns the development of a multi-unit condominium project at 973 Market Street in San Francisco (the property). Plaintiff is a limited liability company formed by Joseph Cassidy. Cassidy is plaintiff's sole member; he is also the sole principal of Centrix Builders, a construction company. Defendants are members or principals of members of 973 Market Associates, LLC (Market Associates). All defendants except Christopher Flood live in Ireland.

In August 2007, Market Associates obtained a $20 million construction loan from United Commercial Bank (UCB) to develop the property. The loan was documented with a promissory note and secured by a deed of trust recorded against the property. UCB required each defendant to execute an 11-page agreement containing a personal continuing guaranty.

Each agreement contained the following clause:

"5.11  Judicial Reference. It is the desire and intention of the parties to agree upon a mechanism and procedure under which any controversy, breach or dispute arising out of this Guaranty will be resolved in a prompt and expeditious manner. Accordingly, any controversy, breach or dispute arising out of this Guaranty and all loan documents

2

executed by Borrower, or relating to the interpretation of any term or provision of such documents, shall be heard by a single referee by consensual general reference pursuant to the provision of the California Code of Civil Procedure, Sections 638 et. seq. The parties shall agree upon a single referee who shall then try all issues, whether of fact or law, and report a statement of decision which either party may file with the clerk or judge and have judgment entered thereon. If the parties are unable to agree upon a referee within ten (10) days of a written request to do so by any party, then any party may thereafter seek to have a referee appointed pursuant to the Code of Civil Procedure Sections 638 and 640. The parties agree that the referee shall have the power to decide all issues of fact and law and report a statement of decision hereon, and to issue all legal and equitable relief appropriate under the circumstances before him or her. The parties shall promptly and diligently cooperate with one another and the referee, and shall perform such acts as may be necessary to obtain prompt and expeditious resolution of the dispute or controversy in accordance with the terms hereof. The cost of such a judicial reference proceeding shall be borne equally by the parties to the dispute."

Defendants initialed each page of their respective agreement and signed directly beneath section 5.11.

By April 2009, defendants defaulted on the loan. In June 2009, UCB assigned the promissory note to plaintiff, who later acquired the property in a trustee's sale.

*The Litigation*

In 2009, plaintiff sued defendants for breach of the guaranty, seeking approximately $14 million, plus interest.[2] Plaintiff served Flood and Manning in 2009 and 2010; they appeared in 2010. In April and June 2010, plaintiff filed case management statements requesting a jury trial and estimating a five-day jury trial.[3] In 2011, Manning, Market Associates and others sued the real estate agent who represented Market Associates in the purchase and sale of the property (San Francisco Superior Court, case No. CGC11508323). In July 2012, and over plaintiff's objection, the court

_____

[2] Plaintiff also sued Michael Murrary. He is not a party to this writ proceeding.
[3] Nearly two years later, in a January 2012 case management statement, plaintiff indicated it would "[S]eek an appointment of a referee under . . . Section 640, should defendants not agree to one under . . . Section 638. In the [agreements] signed by the defendants, they expressly agree to trial by a referee, and thus are not entitled to a jury trial." Plaintiff claims it included this same language in other 2012 case management statements, but these case management statements are not part of the record.

3

consolidated that case with the present action. The remaining defendants — Quigley, Murphy, O'Donoghue, and Walsh — filed answers at various times in 2012; Walsh appeared last and filed an answer in October 2012. In their answers, defendants asserted various affirmative defenses, including unclean hands, estoppel and the illegality and unenforceability of the agreements.

In 2012, defendants and Market Associates cross-complained against Cassidy, Centrix Builders, and others. The cross-complaints alleged claims for, among other things, fraud, breach of fiduciary duty, and interference with prospective economic advantage. As relevant here, defendants claimed Cassidy wrongfully gained confidential and propriety information from them about the loan and the property and used it to purchase the note from UCB for a below-market rate.

*Discovery*

From September 2010 to August 2012, plaintiff served defendants with form and special interrogatories, requests for admission, and requests for production of documents. Plaintiff's requests for production to Manning sought 80 categories of documents, including documents related to the loan and the property. In response, defendants produced approximately 25,000 pages of documents. In 2012, O'Donoghue served plaintiff with special interrogatories, requests for admission, and requests for production of documents. Plaintiff's responses to the requests for production were deficient; the court granted O'Donoghue's motion to compel and ordered plaintiff to provide documents by January 2013. In late December 2012, plaintiff responded to O'Donoghue's special interrogatories and requests for admission.

*The Motion for Appointment of a Referee*

In early December 2012, plaintiff moved for appointment of a referee pursuant to section 638. Plaintiff argued: (1) the agreements were legally enforceable; (2) removing "this matter from the busy court calendar and alleviating the attendant fiscal costs to the Court" would promote the public interest; and (3) the cross-complaints and consolidated action had "no factual or legal relevance to [its] complaint." Cassidy — plaintiff's sole

4

member — submitted a declaration in support of the motion attaching the agreements signed by defendants.

In a declaration submitted in support of the motion, plaintiff's counsel claimed serving O'Donoghue, Quigley, Murphy, and Walsh was difficult because these defendants "were located and Ireland and . . . had to be served by means of the Hague Convention" and because they evaded service. Counsel characterized plaintiff's attempts to serve these defendants as "diligent" and noted the "difficulties . . . in effectuating service in Ireland." Counsel's declaration attached a May 2010 affidavit of service from an Irish solicitor averring he tried to serve Quigley three times on unspecified dates "but failed to do so" because Quigley's residence was surrounded by a gate and no one answered the door when he rang the doorbell.

Defendants raised four arguments in opposition to the reference motion. First, they argued they did not knowingly and voluntarily waive their constitutional right to a jury trial because the reference provision did not "implicate[ ] a waiver of one's constitutional right to a jury trial." Second, they urged the court to decline to enforce the reference provision under *Tarrant Bell, supra,* 51 Cal.4th 538 because allowing a judicial referee to hear "the personal guaranty claims" would duplicate effort, increase costs, and create a risk of inconsistent findings without "diminishing any aspect of the case load before [the trial] Court." As counsel explained, plaintiff's right to recover under the agreements was "inextricably linked to the propriety of the transfer of the [promissory] Note from UCB" to Cassidy and involved Cassidy's "wrongful conduct leading to the transfer, which is at the heart of Defendants' cross-claims against . . . Cassidy and Centrix. . . ."

Third, defendants contended plaintiff waived its right to seek a judicial referee by delaying service of process on defendants "by nearly three years" and by waiting "over three years before seeking the appointment of a judicial referee." They also claimed the case would not be ready for trial any sooner with a judicial referee because plaintiff had "stalled in responding to discovery and steadfastly refused to produce documents for six months," which necessitated an order compelling plaintiff to produce documents.

5

Finally, defendants argued the agreements were unenforceable adhesion contracts containing unconscionable reference provisions. They claimed the agreements were procedurally unconscionable because: (1) they were presented in a "take-it-or-leave-it manner, accompanied by the threat that no loan would be issued . . . unless the guarantor signed the document as presented[;]" and (2) they did not expect the agreements to operate to waive their jury trial rights. According to defendants, the reference provision was substantively unconscionable because it deprived them of their constitutional right to a jury trial and because it contained "one-sided provisions" demanded by UCB that, "unbeknownst to [defendants], engaged in unsound banking practices that could jeopardize the security underlying the guaranties, misconduct sufficient to warrant criminal and quasi-criminal charges against UCB employees."

Each defendant offered a declaration averring: (1) the agreements were presented in a "take-it-or-leave-it manner" without an opportunity for negotiation; (2) defendants did not receive any consideration "in exchange for UCB's desire that the [agreements] contain the [ ] Reference provision[;]" (3) defendants were not provided with any loan-related documents when they signed the agreements; (4) before they signed the agreements, no one explained what a "'judicial referee' entailed" or told them the reference provision would waive their rights to a jury trial; and (5) defendants did not agree to waive their right to a jury trial in any dispute arising from the agreement. Flood further averred he was not represented by an attorney when he signed the agreement and that a UCB representative pressured him to sign it "or else no Construction Loan would be issued." He further stated it would be "financially impossible for [him] to pay for a judicial referee."

Defense counsel submitted a declaration describing the circumstances surrounding Cassidy's purchase of the note for $3.5 million and attaching an appraisal valuing the property at $8.5 million. On information and belief, defense counsel asserted that when defendants defaulted on the loan, UCB refused to negotiate with them or with other prospective purchasers — some of whom were offering $5 million for the note — because UCB was secretly negotiating with Cassidy. Counsel's declaration attached

6

various documents pertaining to the FDIC's seizure of UCB in November 2009 for, among other thing, allowing "illegal 'friendly short sales' conducted by UCB in 2009." The declaration suggested one of these short sales involved Cassidy. Finally, counsel averred plaintiff had "stalled in responding to discovery and steadfastly refused to produce documents. Plaintiff delayed producing documents in response to [a document request] served . . . in July 2012, ultimately necessitating an Order Compelling Plaintiff to Produce Documents filed on December 18, 2012."

In reply, plaintiff argued the judicial reference provisions were enforceable under California law and "clearly and unambiguously" informed defendants "that all controversies would be resolved by a single referee." Plaintiff further claimed it did not waive its right to seek judicial reference because it diligently attempted to serve the Ireland defendants under the Hague convention and moved for judicial reference shortly after the final defendant was served. Finally, plaintiff contended the agreements and reference provisions were not unconscionable.

Following a hearing, the court granted plaintiff's motion for an order appointing a referee. Shortly thereafter, plaintiff's counsel declined to meet and confer about plaintiff's responses to O'Donoghue's special interrogatories and requests for admission, claiming defendants' challenge was "if not moot, in abeyance pending appointment of a referee. Any dispute over discovery . . . must await appointment of a referee and a determination by the referee of the scope of permissible discovery[.]" Plaintiff's counsel also advised defense counsel it would seek to "limit the scope of discovery to the narrow issues at hand, namely the defendants' obligations under the [agreements] and [plaintiff's] damages under the defaulted construction loan" after a referee was appointed.

The court denied defendants' reconsideration motion and appointed a referee. This petition followed. We stayed the order granting the reference motion and issued an order to show cause why the relief requested in the petition should not be granted.[4]

---

[4] We grant defendants' unopposed motions to augment the record and/or take judicial notice of various documents in the superior court file. (Evid. Code, § 452, subd. (d); Cal. Rules of Court, rules 8.155(a)(1)(A), 8.486(b)(1)(C).) We decline to take

7

DISCUSSION

"Judicial reference involves sending a pending trial court action to a referee for hearing, determination and a report back to the court." (*Trend Homes, Inc. v. Superior Court* (2005) 131 Cal.App.4th 950, 955 (*Trend Homes*), disapproved on other grounds in *Tarrant Bell, supra,* 51 Cal.4th 538.) "A general reference directs the referee to try all issues in the action. The hearing is conducted under the rules of evidence applicable to judicial proceedings. In a general reference, the referee prepares a statement of decision that stands as the decision of the court and is reviewable as if the court had rendered it. The primary effect of such a reference is to require trial by a referee and not by a court or jury. [Citation.]" (*Treo @ Kettner Homeowners Assn. v. Superior Court* (2008) 166 Cal.App.4th 1055, 1061 (*Treo*).)

Section 638 "authoriz[es] courts to transfer a dispute to a referee" pursuant to a written agreement between the parties. (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 960-961 (*Grafton*).) Pursuant to section 638, "[A] referee may be appointed . . . upon the motion of a party to a written contract . . . that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties: [¶] (a) To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision. [¶] (b) To ascertain a fact necessary to enable the court to determine an action or proceeding."

_____

judicial notice of the transcript of an April 3, 2013 hearing because it is not "relevant to a material issue" (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2) and because plaintiff did not file a motion for judicial notice. (Cal. Rules of Court, rule 8.252(a)(1) ["[t]o obtain judicial notice by a reviewing court . . . a party must serve and file a separate motion with a proposed order"].)

8

I.

*The Reference Provision Waives Defendants'*
*Right to a Jury Trial*

Defendants contend the reference provision does not waive their right to a jury trial because they did not have "actual notice of, and did not engage in meaningful reflection before agreeing to, the purported waiver." The crux of defendants' claim is paragraph 5.11 cannot — and does not — waive their right to a jury trial because it does not contain the words jury, jury trial, or waiver and, as a result, they did not know they were waiving their rights to a jury trial when they executed the agreements.

Defendants urge us to establish a rule requiring predispute reference agreements to contain explicit language waiving the right to a jury trial. We decline to do so. Section 638 does not require the reference agreement to contain a jury waiver. As the court in *Woodside Homes of California, Inc. v. Superior Court* (2006) 142 Cal.App.4th 99 (*Woodside II*) observed, "[a] statute permitting agreement for a reference unambiguously results in a waiver of 'jury trial' without the need to use those words. Such a reference (like arbitration) entails dispensing with trial in the judicial forum, including jury trial." (*Id.* at p. 104; see also *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 245 (*Pinnacle*); [section 638 "allows appointment of a referee (and hence waiver of a jury trial)"].)

Two courts have enforced reference provisions that did not mention the words jury, waiver, or trial. (See *Greenbriar Homes Communities, Inc. v. Superior Court* (2004) 117 Cal.App.4th 337, 334, disapproved on another point in *Tarrant Bell, supra,* 51 Cal.4th 538; *Woodside II, supra,* 142 Cal.App.4th at p. 101.) Of course, some reference clauses do contain such language, but the fact that some reference clauses contain "waiver of jury trial" language is not dispositive. (See, e.g., *Woodside Homes of Cal. v. Superior Court* (2003) 107 Cal.App.4th 723, 729 (*Woodside I*) ["By initialing below, the parties acknowledge that they have read and understand the foregoing and accept that they are waiving their right to a jury trial'"]; *Treo, supra,* 166 Cal.App.4th at p. 1061 [clause entitled, "WAIVER OF JURY TRIAL"].)

9

The California Supreme Court has concluded an otherwise enforceable agreement to arbitrate need not contain an express waiver of the right to jury trial.[5] (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, fn. omitted (*Madden*).) In *Madden*, the plaintiff argued the arbitration provision failed because it did "not expressly waive the parties' constitutional right to a jury trial." The *Madden* court rejected this argument, explaining, "to predicate the legality of a consensual arbitration agreement upon the parties' express waiver of jury trial would be as artificial as it would be disastrous" because "[w]hen parties agree to submit their disputes to arbitration they select a forum that is alternative to, and independent of, the judicial — a forum in which, as they well know, disputes are not resolved by juries. Hence there are literally thousands of commercial and labor contracts that provide for arbitration but do not contain express waivers of jury trial. Courts have regularly enforced such agreements. . . ." (*Id.* at pp. 713-714.) The *Madden* court declined to "fetter" the arbitration institution with "artificial requirements" that an arbitration "provision itself must explicitly waive rights to jury trial." (*Id.* at pp. 714-715.)

Our high court recently reaffirmed this principle and "declin[ed] to read additional unwritten procedural requirements, such as actual notice and meaningful reflection, into the arbitration statute." (*Pinnacle, supra,* 55 Cal.4th at p. 245, fn. omitted; *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 853 [citing *Madden* with approval and noting arbitration agreements need not contain an explicit jury trial waiver].) We reach the same conclusion here. We hold it would be anomalous to require such an express waiver in a predispute reference agreement, and we decline to read into section 638 the requirement that a reference agreement explicitly waive rights to a jury trial. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 804 (*Badie*) [effective jury trial waiver "particularly in a nonadhesive contract, need not expressly state, 'I waive my right to a jury trial'"].)

An agreement to arbitrate must, however, "clearly and unambiguously show that the party has agreed to resolve disputes in a forum *other than* the judicial one, which is

_____

[5] As we explain *infra*, cases interpreting arbitration agreements are instructive here.

10

the only forum in which disputes are resolved by juries." (*Badie, supra,* 67 Cal.App.4th at p. 804.) Paragraph 5.11 satisfies that test. It contains the heading "Judicial Reference" and advises that all disputes "shall be heard by a single referee by consensual general reference pursuant to the provision of the California Code of Civil Procedure, Sections 638 et. seq." and that the referee "shall then try all issues, whether of fact or law, and report a statement of decision which either party may file with the clerk or judge and have judgment entered thereon." Paragraph 5.11 further states "[t]he parties agree that the referee shall have the power to decide all issues of fact and law and report a statement of decision hereon, and to issue all legal and equitable relief appropriate under the circumstances before him or her." This language is sufficient to show the parties here have "agreed to resolve disputes in a forum *other than* the judicial one, which is the only forum in which disputes are resolved by juries." (*Badie,* at p. 804.)

*Treo, supra,* 166 Cal.App.4th 1055 does not assist defendants. *Treo* held equitable servitudes created by a covenants, conditions, and restrictions (CC & R's) did not constitute a "contract" within the meaning of section 638. (*Id.* at pp. 1066, 1067.) The *Treo* court's conclusion that CC & R's are not a written contract pursuant to section 638 has no application here. We reject defendants' claim that paragraph 5.11 does not waive their right to a jury trial because it does not contain language explicit language regarding such waiver.

II.

*The Reference Provision is not Unconscionable*

Next, defendants argue the reference provision is unenforceable because it is procedurally and substantively unconscionable. "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable

11

when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."' [Citation.]" (*Pinnacle, supra,* 55 Cal.4th at p. 246.)

"The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle, supra,* 55 Cal.4th at p. 247.) "Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence." (*Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 708.)

The reference provision reflects a low degree — if any — of procedural unconscionability. As stated above, "procedural unconscionability requires oppression or surprise. ""'Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'" [Citation.]" (*Pinnacle, supra,* 55 Cal.4th at p. 247.) Claiming there was oppression, defendants point to the declarations they offered in opposition to the reference motion, where they averred they: (1) were presented with the agreements in a "take-it-or-leave-it manner;" (2) felt they had no option but to sign the agreements to obtain the loan; and (3) believed the terms of the agreements were not negotiable. While this may be true, it does not carry the day for defendants because the "adhesive aspect" of a contract "is not dispositive" on the issue of unconscionability. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 (*Serpa*); see also *Pinnacle, supra,* 55 Cal.4th at p. 248, fn. 13.)

"Even if we do assume an imbalance in bargaining power, and that [UCB], as the stronger party, presumably prepared the [agreements] with an eye to its own advantage, and even if we also assume that [UCB] would not have countenanced the striking of the . . . reference provisions, [defendants] have nevertheless only shown a low level of procedural unconscionability because, as we . . . [discuss below], the elements of surprise

12

or . . . misrepresentation . . . [are] not present." (*Woodside I, supra,* 107 Cal.App.4th at p. 730.)

Defendants' claim of surprise is unavailing in light of *Greenbriar*, where the Third District Court of Appeal analyzed an identical reference provision and concluded there was "no element of surprise." (*Greenbriar, supra,* 117 Cal.App.4th at p. 345, disapproved on another point in *Tarrant Bell, supra,* 51 Cal.4th 538.) The *Greenbriar* court determined the judicial reference provision at issue there was "written clearly in the same sized font as the rest of the agreement, and is easily understood. The provision was not buried in the agreement, but in fact appeared at a location where the purchaser was almost certain to see it—immediately above where the purchaser would sign the agreement." (*Greenbriar, supra,* 117 Cal.App.4th at p. 345, disapproved on another point in *Tarrant Bell*, *supra*, 51 Cal.4th 538.) The same is true here. The reference provision "was *not* obtained by a 'stealthy device' such as the burial of the provision near the end of 70 pages of text." (*Woodside I, supra,* 107 Cal.App.4th at p. 734.) The reference provision was placed in a conspicuous location at the end of a relatively short contract.[6]

Nor was UCB — as defendants suggest — required to explain the reference provision to defendants. The reference provision clearly states "that in the event of a civil action involving a dispute arising out of the guaranty, the action will be heard by a judicial reference." It cites the pertinent Code of Civil Procedure section governing judicial reference, notes that "only one referee will be appointed[,]" and what explains what "occurs if the parties cannot agree on the referee." Finally, the reference provision states the referee will have the power to decide all issues in the action, to report a statement of decision, and to issue all legal and equitable relief as appropriate. (*Trend Homes, supra,* 131 Cal.App.4th at p. 960, disapproved on another ground in *Tarrant Bell,*

---

[6] This is not a situation like the one in *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081 (*Pardee*), where the appellate court concluded a judicial reference provision was procedurally unconscionable because it was "buried" in a form contract, was "physically difficult to read," suffered from a possibly misleading caption, and was silent on referee fees. (See *Greenbriar*, *supra*, 117 Cal.App.4th at p. 346.)

13

*supra,* 51 Cal.4th 538.)  There is no evidence in the record that defendants "lacked education, experience, or sophistication necessary to understand the [guaranties][.]"  (*Id.* at p. 959.)  To the contrary, the evidence suggests defendants had significant experience in real estate transactions, an extensive real estate portfolio, and a substantial net worth.  For example, defendant O'Donoghue owned a 50 percent interest in seven Bay Area properties and had a 2007 net worth of over $3 million.  Defendants Quigley, Murphy, Walsh, and Manning owned a limited partnership with a net worth of over $22 million.

Given the low degree of procedural unconscionability, defendants are required to show a high degree of substantive unconscionability to render the reference provision unenforceable.  (*Serpa, supra,* 215 Cal.App.4th at p. 704.)  They cannot.  The reference provision is not substantively unconscionable.  The "terms are not so one-sided as to 'shock the conscience,' nor are they harsh or oppressive."  The provision does "not limit the amount or type of relief [defendants can] obtain.  By means of judicial reference, the provision attempted to ensure the parties would have their rights enforced and arguments resolved in as efficient and fair a manner available to them, consistent with the rules of procedure and evidence that apply to a trial.  Even the referee's fees were to be shared equally."  (*Greenbriar, supra,* 117 Cal.App.4th at p. 345, disapproved on another point in *Tarrant Bell*, *supra*, 51 Cal.4th 538 .)

With the exception of defendant Flood, none of the defendants made any attempt to establish "the probable additional expenses of a judicial reference, if any, would be impossible or unreasonably difficult for them to pay[,]" nor did they offer "any evidence that the decision to agree to judicial reference was not economically sound from their point of view."  (*Woodside I, supra,* 107 Cal.App.4th at pp. 733-734, fn. omitted.)  While it may be true, defendants' claim that they will "suffer undue expense and inconvenience associated with travel from Ireland as the reference proceeding and the trial progress at different times" is unsupported by a citation to the record.

Like other courts before us, we reject defendants' claim that the reference provision was substantively unconscionable because defendants did not receive "bargained for consideration in return" for the inclusion of paragraph 5.11 in the

14

agreements. Defendants "*did* get something in addition for their jury waiver—[plaintiff's] matching waiver." (*Woodside I, supra,* 107 Cal.App.4th at p. 734.) There is nothing in the record suggesting "a truly neutral decision maker chosen under the [agreements] will not return a *fair* decision, or that, if the decision is in favor of [defendants], the award will not represent *complete and reasonable compensation* for their damages." (*Id.* at p. 735.) In addition, judicial reference "provides economies both of time and expense." (*Id.* at pp. 732-733; see also *Treo, supra,* 166 Cal.App.4th at p. 1066 [noting 1982 amendment to section 638 allowing "parties by written contract . . . to agree that any controversy arising therefrom be heard by reference . . . was an attempt to lessen judicial delays that were at the time a serious problem"].)

The parties' "waiver of their right to a jury trial does not render [the reference provision] substantively unconscionable." (*Trend Homes, supra,* 131 Cal.App.4th at p. 963.) When "parties agree to judicial reference, as opposed to arbitration, they retain nearly all of their procedural and constitutional rights, since the rules of evidence apply to the proceeding, which is conducted like a trial, and the parties retain appellate rights. The only right the parties agree to give up is the right to a jury trial." (*Id.* at p. 964.) We conclude the reference provision is not unconscionable.

## III.
### *Under the Circumstances of this Case, Defendants Have Not Established Plaintiff Waived Its Right to Judicial Reference*

Defendants' third claim is plaintiff "waived any right to a reference." They have not cited, and our research has not disclosed, any case applying waiver in the context of judicial reference. In the absence of such authority, the parties urge us to apply cases regarding waiver of a contractual right to arbitration.

The Legislature has enacted a comprehensive statutory scheme "*authorizing* predispute arbitration agreements" in section 1280 et seq. (*Grafton, supra,* 36 Cal.4th at p. 964.) Section 1281.2 — part of this statutory scheme — requires a court to enforce an agreement to arbitrate unless certain conditions have been met, including where "[t]he right to compel arbitration has been waived by the petitioner[.]" (§ 1281.2, subd. (a).)

15

There are differences between arbitration and judicial reference, and section 1281.2 does not expressly apply to judicial reference. Arbitration cases, however, are "informative" here. (See *Trend Homes, supra,* 131 Cal.App.4th at p. 961 [noting there was "no reason not to apply" California Supreme Court authority on unconscionability of an arbitration agreement "in the context of judicial reference"], disapproved on another point in *Tarrant Bell, supra,* 51 Cal.4th 538; *Woodside I, supra,* 107 Cal.App.4th at p. 727 [review of arbitration statutes was "justified in evaluating the enforceability" of judicial reference provisions].) Moreover — and apart from any statutory authority — a party may waive its right to judicial reference. Like other contractual rights, the right to judicial reference may be waived. (See *Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1151; *Cinel v. Barna* (2012) 206 Cal.App.4th 1383, 1389 ["[c]ontractual rights are subject to waiver, and waiver may be express or implied . . ."].) We therefore look to authority concerning waiver of arbitration to determine whether plaintiff waived its right to judicial reference.

"Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.]" (*Brown v. Superior Court* (2013) 216 Cal.App.4th 1302, 1313 (*Brown*).) Defendants urge us to apply an "independent standard of review" because "the facts are undisputed and [because] only one inference may reasonably be drawn, the issue is one of law[.]'" [Citation.]" (*Ibid.*) We decline to apply a de novo standard of review because the inferences to be drawn from the evidence on waiver are very much in dispute. Where, as here, the facts are disputed, "[o]ur function is to determine whether the trial court's finding of no waiver is supported by substantial evidence." (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 608, overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1.) "We infer all necessary findings supported by substantial evidence [citations] and 'construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance[.]' [Citation.]" (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443 (*Lewis*).)

16

"'There is no single test for waiver of the right to compel arbitration[.]'" (*Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 337 (*Augusta*), quoting *Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1363-1364 (*Berman*).) Our high court, however, has articulated six factors a trial court should consider to determine whether a party has waived its right to arbitrate: "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." [Citations.]'" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)

Though some courts apply a more limited three-factor test, "'the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration.'" (*Berman, supra,* 80 Cal.App.4th at p. 1364, quoting *Davis v. Continental Airlines, Inc.* (1977) 59 Cal.App.4th 205, 212 [applying a three-factor test].) In addition, just as public policy favors arbitration, public policy should favor judicial reference. In a statutory judicial reference, parties have the advantage of a decision maker of the parties' own choosing, who will schedule reliable hearing and trial dates with flexibility to accommodate competing scheduling issues. (See Kough, *Judicial References* (Aug. 2013) California Lawyer, p. 17; see also *Woodside I, supra,* 107 Cal.App.4th at pp. 732-733 [judicial reference "provides economies both of time and expense"].) The parties retain the procedural rights of a civil trial court, including the right to appeal. (§ 645.) Parties may agree to a determination of all or only some of the issues in an action, "whether of fact or of law," (§ 638, subd. (a)) and a referee may be appointed to "ascertain a fact necessary to enable the court to determine an action or

proceeding." (§ 638, subd. (b).)  It follows that a party's argument that judicial reference has been waived should be subject to the same "close judicial scrutiny" as waiver of arbitration and the "party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes*, *supra,* 31 Cal.4th at p. 1195.)  Applying these principles here, we conclude plaintiff has not waived its right to judicial reference because defendants have not demonstrated prejudice on the record before us.

Defendants contend plaintiff delayed seeking judicial reference and exhibited litigation conduct inconsistent with an intent to proceed before a judicial referee. (*Augusta, supra,* 193 Cal.App.4th at p. 339.)  They are correct.  These support a finding of waiver.  Plaintiff waited three years after filing the complaint, two-and-a-half years after the first defendant appeared, and approximately six months after defendants cross-complained to move for judicial reference.  In addition, plaintiff requested a jury trial in two 2010 case management statements[7] and obtained discovery from defendants before moving for reference  (See *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228-1229.)

Two other factors, however, favor plaintiff or do not apply.  The "'litigation machinery'" had not been "'substantially invoked[,]'" nor were the parties "'well into preparation of a lawsuit'" before plaintiff notified defendants of its intent to seek reference.  (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)  Courts have concluded a party invoked the court's litigation machinery where the party moved for summary judgment, "participated in a mandatory settlement conference, and allowed the case to proceed to the brink of trial" (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1099) or where the parties filed a motion for class certification and a motion to dismiss (*Quevedo v. Macy's, Inc*. (C.D. Cal. 2011) 798 F.Supp.2d 1122, 1131.)  While

---

[7]  Nothing prevented plaintiff from advising the court in 2010 or 2011 — when two defendants had been served — that it *intended* to move for reference once all defendants had been served and appeared.  Instead of informing the court about the reference provision in the agreements, plaintiff demanded a jury trial in 2010 and waited until 2012 — after it had propounded extensive discovery and after defendants cross-complained — to advise the court of its intention to seek the appointment of a referee.

18

some discovery has occurred, plaintiff has not substantially invoked the litigation machinery.  Nor did plaintiff file a counterclaim without seeking a stay.  (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

According to defendants, plaintiff's delay in seeking reference compels a finding of waiver.  We disagree.  We cannot conclude the delay was unreasonable under the circumstances present here, particularly given the difficulty plaintiff had in serving certain defendants in Ireland.  The cases upon which defendants rely to support their argument that plaintiff unreasonably delayed seeking to compel reference are inapposite.  In the cases cited by defendants, there were additional reasons for finding prejudice in addition to delay.  (See, e.g., *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992-997 [during 10-month delay, defendant participated in hearings and status conferences, filed demurrers, engaged in expansive discovery, and forced the opposing party to spend over 200 hours preparing for trial by waiting until one month before trial to compel arbitration]; *Augusta, supra,* 193 Cal.App.4th at p. 340 [during six-and-half-month delay, moving party conducted discovery, litigated discovery motions, and filed a demurrer].)

Notwithstanding plaintiff's use of discovery procedures and its delay in seeking judicial reference, we conclude plaintiff has not waived its right to reference because defendants have not established prejudice.  Courts "'will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses.' [Citation.] [Courts] assess prejudice in light of California's strong public policy favoring arbitration.  [Citation.]  'Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.'  [Citation.]  Prejudice may be found where the petitioning party used the judicial process to gain information it could not have gained in arbitration, waited until the eve of trial to seek arbitration, or delayed so long that evidence was lost.  [Citation.]" (*Brown, supra,* 216 Cal.App.4th at p. 1316.)

19

Here, plaintiff did not wait until the eve of trial to seek reference and there is no indication in the record plaintiff delayed so long that evidence was lost. Defendants claim they were prejudiced because plaintiff obtained extensive discovery, refused to provide meaningful responses to their discovery, and then expressed an intent to limit the scope of discovery before the referee. The test for prejudice is whether plaintiff used court discovery processes to gain information about defendants' case which plaintiff could not have gained in judicial reference. (*Berman, supra,* 80 Cal.App.4th at p. 1367.) In other words, courts have found prejudice where a party "availed itself of discovery mechanisms . . . not available in arbitration." (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205.) Here, defendants have the same right to discovery before a judicial referee as they do in court. (*Trend Homes, supra,* 131 Cal.App.4th at p. 963.) That plaintiff *may*, at some point in the future, seek to limit the scope of discovery before the referee is not dispositive where there is no indication the referee would be willing to limit discovery. Defendants have not demonstrated plaintiff "used the judicial process to gain information [plaintiff] could not have gained" in judicial reference, particularly where the parties may avail themselves of all the judicial remedies in superior court and on appeal. (See *Brown, supra,* 216 Cal.App.4th at p. 1316.)

On the record before us, we cannot conclude the evidence compels a finding of prejudice and, as a result, we must affirm the trial court's ruling regarding waiver. (*Lewis, supra,* 205 Cal.App.4th at p. 453.)

III.

*Granting the Reference Motion Was Not an Abuse*
*of Discretion under Tarrant Bell*

Defendants' final argument is the court abused its discretion by granting the reference motion because ordering reference would cause duplicative parallel proceedings, create a risk of inconsistent rulings, and would not promote judicial economy. Defendants rely on *Tarrant Bell*, where the California Supreme Court held "a trial court has discretion to refuse to enforce a predispute agreement providing that, in the event of dispute, a referee may hear and decide certain contested issues" (*Tarrant Bell,*

20

*supra,* 51 Cal.4th at p. 540) and determined the trial court "acted well within its discretion in basing its refusal to appoint a referee on the risk of inconsistent rulings and considerations of judicial economy."[8] (*Id.* at p. 545.)

In their reply, defendants argue the court operated under the misapprehension it lacked discretion to deny the reference motion. Defendants point to the court's comments at the hearing, claiming they demonstrate the court "erroneously believed it had no discretion to deny a reference and, therefore, disregarded the factors highlighted in *Tarrant Bell.*"[9] Under well established rules of appellate review, we need not consider arguments raised for the first time in a reply brief. (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6.)

Assuming this argument is properly before us, we reject it on the merits. At the hearing on the motion, defense counsel argued: "this is another point that actually was

---

[8] In *Tarrant Bell*, 120 current and former lessees and residents of a mobilehome park sued defendant park owners for, among other things, subjecting park residents to substandard living conditions. (*Tarrant Bell*, *supra*, 51 Cal.4th at p. 540.) The lease agreements between the park owners and about 100 plaintiffs contained a judicial reference provision and the park owners moved to appoint a referee to hear the dispute under section 638. (*Id.* at pp. 540-541.) The trial court denied the motion, noting the "possibility of 'inconsistent judgments' were it to order reference only as to [plaintiffs] who had signed a predispute reference agreement" and concluding that "'the purposes of section 638 would not be promoted by a general Reference of some claims and not others.'" (*Id.* at p. 541.)

As the trial court explained, "'[o]rdering two groups of [plaintiffs] to try their cases in separate but parallel proceedings would not reduce the burdens on this court or the parties, result in any cost savings, streamline the proceedings, or achieve efficiencies of any kind. The parties would be required to conduct the same discovery, litigate[,] and ultimately try the same issues in separate but parallel forums. A general reference would thus result in a duplication of effort, increased costs, and potentially, delays in resolution. Moreover, it would not reduce any burden on this Court, which would almost certainly have to hear, and decide, all of the same issues.'" (*Tarrant Bell*, *supra*, 51 Cal.4th at p.541, quoting *Greenbriar, supra,* 117 Cal.App.4th 337.)

[9] A statement of decision or oral statement of the court's analysis would have been helpful here, where the two-sentence tentative ruling addressed only unconscionability and not the remaining arguments raised in opposition to the motion. Critically, as we discuss *infra,* such a statement of decision or oral explanation of the court's analysis would have clarified that the court understood the scope of its discretion.

not addressed in the tentative ruling that we've put in our opposition papers. [¶] The consequences of [ ] granting a motion for judicial referee is going to cut this case in half. So the personal guarantee claims are going to be heard by a judicial referee, and the cross-complaints for indemnity and affirmative relief are going to be heard in the regular court system. This is addressed . . . in *Tarrant Bell* saying [it's] improper; you should not have two separate parallel proceedings." Counsel then listed a specific example illustrating how "[a]bsolutely dispositive factual issues are going to come up in" both the reference action and the court action. The court interrupted counsel and directed plaintiff's counsel to respond to defendants' argument that the language of the reference provision was insufficient to waive defendants' right to a jury trial.

Later, defense counsel returned to her argument regarding *Tarrant Bell*, again noting the tentative ruling "doesn't address this" and the following colloquy occurred:

"[DEFENSE COUNSEL]: The consequences of a dual track action. Now we're going to have —

"THE COURT: We have that all the time.

"[DEFENSE COUNSEL]: Can I work through this for a minute?

"THE COURT: I know exactly what you mean. Sure. It settles — that's often very helpful. This is going to settle, what, multi-million dollars issues?

"[PLAINTIFF'S COUNSEL]: The balance of the claims are indemnity claims, Your Honor.

"[DEFENSE COUNSEL]: That's not true.

"THE COURT: I don't find that a drawback.

"[DEFENSE COUNSEL]: So we have this . . . finding of facts as to whether the transfer from UCB to Joe Cassidy was an invalid transfer under the judicial referee. If it comes back and says, yes, that was valid, do they get to use that as collateral estoppel in our other case where we've not been deprived of the right to a jury trial as to that issue where we clearly have a right to a jury trial? Let me —

"THE COURT: Let's cross that bridge.

"[DEFENSE COUNSEL]: Let me give you an example.

22

"THE COURT: Why am I going to speculate about these things?

"[DEFENSE COUNSEL]: It's because that's why the . . . the California Supreme Court in *Tarrant Bell* refused to have dual tracks. They took a similar situation and said, no, we're not going to take some claims and send them off here—

"THE COURT: I don't see it as a detriment here. If anything, I see the other side of it that it might be a good idea.

"[DEFENSE COUNSEL]: I guess that's contrary to what the *Tarrant Bell* court thought when faced with the same identical circumstances. [¶] . . . Your Honor, if you don't want the hypotheticals —

"THE COURT: I really feel this is a statutory issue. I really do. I think you've got a good idea, but that agreement is so solid. It is. As Daniel Webster would say, copper bottomed. Rock ribbed and copper bottomed. That's the way I see it."

On the one hand, there may be a plausible argument the court was mistaken in its belief that whether to grant plaintiff's motion was solely a "statutory issue." Under *Tarrant Bell*, it is clear a trial court has discretion to refuse to enforce a predispute agreement for the reasons discussed above. (*Tarrant Bell, supra*, 51 Cal.4th at pp. 542, 545.) Following defendants' argument to its logical conclusion, the court's purported mistaken belief about the scope of its discretion and its "'failure to exercise discretion [was] itself an abuse of discretion.'" (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1099, quoting *In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515; see also *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285 [abuse of discretion may be established by showing the court "erred in acting on a mistaken view about the scope of its discretion"].)

On the other hand, one could interpret the court's comments as a rejection of defendants' arguments regarding *Tarrant Bell*. Defense counsel repeatedly argued having dual tracks was a basis to deny the motion under *Tarrant Bell*. In response, the court stated, "I don't see that as a detriment here. If anything, I see the other side of it that might be a good idea." When defense counsel began to discuss the "consequences of a dual track action," the court responded, "[w]e have that all the time" and said, "I know

23

exactly what you mean.  Sure.  It settles — that's often very helpful."  The court then stated the presence of indemnity claims in the court litigation "was not a drawback." These comments suggest the court considered — and rejected — defense counsel's *Tarrant Bell* arguments.  On this record, we cannot conclude the court failed to exercise its discretion.

There may have been sound reasons to deny the reference motion.  Requiring defendants to defend plaintiff's complaint before the referee but litigate their cross-complaints in court could force the parties "to conduct the same discovery, litigate[,] and ultimately try the same issues in separate but parallel forums" (*Tarrant Bell, supra,* 51 Cal.4th at p. 541) because the defenses asserted by defendants in response to the complaint are based on identical facts as their cross-claims against Cassidy and Centrix. In addition, requiring reference could create a risk of inconsistent rulings because Cassidy is not subject to the reference order, raising issues of collateral estoppel as the reference and trial court actions proceed at different times.  That another court might reasonably have reached a different result on this issue, however, does not demonstrate an abuse of discretion.  An abuse of discretion may be found only if "'no judge could have reasonably reached the challenged result.  [Citation.]  "[A]s long as there exists 'a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be . . . set aside.'"'  [Citation.]" (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696.)  We cannot conclude there is an abuse of discretion here.

## DISPOSITION

The petition for writ of mandate/prohibition is denied.  The previously issued stay shall dissolve upon issuance of the remittitur.  (Cal. Rules of Court, rules 8.490(c), 8.272.)  Plaintiff shall recover its costs.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

                                                        _____

                                                        Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

A137996

25

Superior Court of the City and County of San Francisco, No. CGC09494591, Ernest H. Goldsmith, Judge

Catherine M. Leon, Futterman Dupree Dodd Croley Maier LLP, Martin H. Dodd, Christopher Flood, in Pro. Per. for Petitioners.

No appearance for Respondent

Steyer Lowenthal Boodrookas Alvarez & Smith LLP, Jeffrey H. Lowenthal and Edward Egan Smith, Law Offices of Gary A. Angel, Gary A. Angel and Frear Stephen Schmid for Real Party in Interest.

A137996