Filed 3/25/14  In re Adrian T. CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ADRIAN T., JR., et al., Persons Coming Under the Juvenile Court Law. | D064788 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  ADRIAN T., SR.,  Defendant and Appellant. | (Super. Ct. No. CJ1051C-D) |

APPEAL from an order of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Adrian T., Sr., (father), is the father of M.T., who turned four years old in September 2013, and Adrian T., Jr., who turned five years old in June 2013. The juvenile court terminated the father's services, scheduled a permanency plan hearing under Welfare and Institutions Code section 366.26,[1] and summarily denied the father's petition for a hearing under section 388.

The father appeals, arguing that the court erred in finding he had not met his burden under section 388 to make a prima facie showing of changed circumstances. We affirm the order.

BACKGROUND

A.    *Detention and Jurisdiction/Disposition*

On December 16, 2011, the San Diego County Health and Human Services Agency (the Agency) filed petitions on behalf of then three-year-old Adrian and two-year-old M.T. pursuant to section 300, subdivision (b). The Agency alleged the children were exposed to domestic violence between the parents, the father violated a temporary restraining order, the father drank alcohol to excess and threatened suicide, and the mother used methamphetamine. The Agency's December 15, 2011, detention report summarized the events in the months leading to the Agency filing the petition.

On June 24, 2011, the Agency received a referral that the family was being evicted from military housing due to a dangerous dog and numerous police contacts.

---

[1]    Further statutory references are to the Welfare and Institutions Code unless otherwise noted.

On August 23, 2011, the Agency received a referral alleging the parents had argued and the mother scratched the father. The father had also consumed half a bottle of vodka and then poured a caustic liquid used for cleaning into a glass with the intent to drink it to attempt suicide. The father changed his mind, but left the chemical in reach of the children and fell asleep. M.T. was hospitalized over concerns he ingested the chemical. The father was placed on a mental health hold pursuant to section 5150, and the military issued a protective order and provided him alcohol treatment.

Two months later, on October 21, 2011, the father was arrested when he kicked in the bathroom door in the home and pulled the mother by the back of her purse and shirt. The father had consumed half a bottle of tequila earlier in the day, and the children were present during the incident. The mother reported that this incident was the second time the father had been arrested for domestic violence.

On October 31, 2011, a judge handling the father's criminal case issued a criminal protective order prohibiting the father from contacting the mother and children until October 2014. The father admitted to violating the protective order on November 30, 2011.

On November 8, 2011, the Agency conducted a team decision meeting with the family, and the mother agreed to participate in voluntary services with the Agency and seek an order for supervised visitation for the father. However, the mother failed to follow through with her agreement and failed to engage in services. On December 7, 2011, the mother tested positive for methamphetamine.

3

On December 12, 2011, the father violated the protective order again when he appeared at the mother's home at 1:05 a.m., pounded on the door, and asked to see the children. He smelled of alcohol and fled when the mother called the police. Officers located the father and arrested him. While being transported, the father threatened to kill himself and repeatedly slammed his head into the metal window bars in the police car. Officers restrained him further and took him to county mental health to be evaluated before he was booked in jail.

At the same time the Agency filed the petitions, it also requested protective custody warrants for the children pursuant to section 340. On December 15, 2011, the juvenile court ordered the children be removed from the parents pending the detention hearing.

At the December 16, 2011 detention hearing, the court made findings on the petitions and ordered the children detained in out-of-home care. The mother was referred to dependency drug court, but she failed to attend several times and was terminated.

For the jurisdiction and disposition hearing on January 11, 2012, the social worker recommended the children remain in out-of-home care and the parents be offered reunification services. The mother admitted to using methamphetamine since she was 14. When the children were removed, she was using three times per week, but she planned to enroll in treatment. Shortly before the jurisdiction hearing, the mother was arrested when police found narcotics and drug paraphernalia in her home. She also failed to drug test for the Agency.

The father admitted to a history of alcohol abuse. He stated he completed a three-week detoxification program in August 2011, but relapsed a few months later in December 2011. He claimed to be sober but did not go to Alcoholics Anonymous (AA) meetings. The father planned to enroll in services with the military. With respect to domestic violence, the father acknowledged he grabbed the mother and admitted he had been drinking at that time, but he did not feel he had a problem with domestic violence. He blamed the mother for the family's circumstances. He also minimized his two suicide attempts.

The father's Navy family advocacy case manager reported he was in a one-year aftercare program for substance abuse, but he had missed many sessions. In addition, he was diagnosed with adjustment disorder, but he was inconsistent with therapy attendance.

The parents set the case for trial. For the January 30, 2012, settlement conference, the Agency reported the children were placed with the paternal grandmother. The parents waived their trial rights, and the juvenile court made true findings on the petitions by a preponderance of the evidence. The juvenile court also declared the children dependents and removed them from the parents' custody. The court ordered reunification services for the parents and granted them supervised visits. The mother was also ordered back into dependency drug court. However, the mother again missed several hearings in dependency drug court and was terminated.

B.     *The Reunification Period*

For the six-month review hearing on July 31, 2012, the Agency recommended reunification services be terminated for the mother and continued for the father, and the children remain placed with the grandmother.  The mother had consistent supervised visits with the children, but had not made progress on her reunification plan.

However, the father completed his domestic violence group and individual therapy.  Although he had attended three AA meetings per week, he had not started working on the recovery steps or obtained a sponsor.  He had progressed in visitation to unsupervised and weekend overnight visits.

The Agency placed the children with the father for a trial visit on August 20, 2012.  At a contested hearing on September 26, 2012, the court placed the children with the father and terminated the mother's reunification services.

C.     *The First Section 387 Petition*

Three months after the children were placed with the father, the Agency filed section 387 petitions to remove them from his care.  The detention report filed with the petitions explained that the mother and father had been having contact with each other in violation of the criminal protective order and had been involved in physical altercations.  Further, on November 29, 2012, the social worker found the mother alone with the children in the father's home.  Although the mother acknowledged that her visits were to be supervised by someone other than the father and that they had been violating the restraining order, she admitted coming to the father's home several times per week for several weeks.

The children informed the social worker that the mother had assaulted the father with a knife and made his head bleed. Adrian showed the social worker a hole in a wall where the mother stabbed the wall with a knife. The mother also stated the father punched and knocked her to the ground on Thanksgiving. The boys said their parents yelled and hit each other all the time, and they were scared. The mother was still using methamphetamine, and the father had an alcohol relapse.

At the detention hearing on the section 387 petitions, the juvenile court found a prima facie showing was made on the petitions and detained the children in licensed foster care. It ordered separate, supervised visits for the parents.

For the next hearing on December 21, 2012, the Agency reported the substance abuse specialist was recommending the father attend three AA meetings per week, which the social worker did not believe was sufficient. The social worker believed the father minimized his relapse, and she questioned relying on his self-reporting to make a treatment recommendation. The Agency recommended that he attend another outpatient drug treatment program and complete a 52-week domestic violence program.

At the pretrial settlement conference, the Agency recommended terminating the father's reunification services and setting the matter for a section 366.26 permanency plan hearing. It noted the case was at the 12-month point and although the father had completed extensive services, he had not made real progress with his case plan as evidenced by his relapse and continued domestic violence with the mother in front of the children.

For the contested hearing on February 6, 2013, the social worker reported her suspicion that the father was still using alcohol to excess, as he had left the social worker multiple voice mails in which he slurred and mixed his words, yelled, and cursed. The social worker directed him to drug test, but he failed to do so. In addition, the father still had not started domestic violence classes.

At the contested hearing on February 6, 2013, the juvenile court made a true finding on the section 387 petitions and authorized placement of the children with the paternal grandmother. The court terminated the father's services and set the matter for a section 366.26 hearing.

D.     *The Section 366.26 Hearings*

The section 366.26 hearings were continued several times because the Agency needed more time to assess the permanent plan for the children and investigate allegations that the paternal grandmother had physically abused M.T. In addition, M.T.'s therapist initially reported the caregiver was not meeting M.T.'s emotional needs.

The Agency filed an addendum report for the October 9, 2013, continued section 366.26 hearing. It recommended a plan of guardianship for the children. The social worker reported that four of the five child abuse referrals received within the last six months were deemed "unfounded," and one was "inconclusive." M.T.'s therapist reported the grandmother and M.T. were doing much better, and she would be closing the case and would make no further recommendations. The caregiver preferred a plan of guardianship, rather than adoption.

E.      *The Father's Section 388 Petition and the Agency's Response*

Meanwhile, on October 1, 2013, the father filed a section 388 petition. He requested the children be placed with him based partly on his completion of an outpatient substance abuse program at Minorities Overcoming Risk in Long Beach, California, on August 7, 2013, and participation in individual counseling while in that program. In his petition, he stated he completed a four-hour parenting class, had tested negative for drugs, attended Narcotics Anonymous meetings, and was enrolled in school. He asserted placing the children with him would be in their best interests because he was once their sole provider and believed he could attend to their daily needs again. He also alleged he was staying away from the mother, but maintained regular visits with the children. The juvenile court set an initial hearing on the father's section 388 petition for October 9, 2013, together with the continued section 366.26 hearing.

The Agency opposed the father's section 388 petition in its October 9, 2013, addendum report. It noted that while the father engaged in some services on his own, he had failed to address one of the most significant issues in this case: domestic violence. During the reunification period, the father completed a 26-week domestic violence program. After he completed the program, he reunited with the mother and was involved in at least two more domestic violence incidents. He was then referred to a 52-week program, but did not attend. In addition, the father had a history of domestic violence with arrests in 2010 and 2011. As a result, he was subject to the terms of a restraining order, which he violated many times. While the children lived with the father, they were scared of the violence between the parents. Moreover, the mother informed the social

9

worker she remained in contact with the father by telephone. Other professionals involved in the case, such as the social worker's supervisor and the visitation monitor, observed the father was short-tempered and quick to escalate his anger.

F.     *The Prima Facie Hearing on the Father's Section 388 Petition.*

After hearing argument, the juvenile court found the father had not made a prima facie showing on his section 388 petition and denied his request for an evidentiary hearing. Specifically, the court found as follows:

> "I realize that the standard is very low in terms of making a prima facie [showing], but I do not find on this record before me, in light of the history of this case, that father has made a prima facie [showing] as to either changed circumstances or best interest of the children.
>
> "Specifically, with respect to the court's termination of reunification services and what was known to the court in February of 2013, when that order was made, indeed, the court's very familiar with the history of this case, where the children were actually returned to the father's care. . . . [N]ot only was this a family with domestic violence issues, but there was also a substance abuse issue.
>
> "While the efforts that father has made since his services were terminated in February, with respect to substance abuse are clearly outlined in the — in the [section] 388 petition, and I note he's also taken parenting class and is in school.
>
> "With respect to the substance abuse, I find, at best, that's a changing circumstance as opposed to a changed circumstance. But more importantly, and as noted by county counsel, and by the social worker in the — in the report filed for today, but also directly in the court's memory . . . when the children had to be removed from father, it was very clear that there was a significant long-term domestic violence history with mother.
>
> "And despite prior services being offered to father in that regard, there were significant events in November of 2012 which caused the children's removal.

"And while I understand its argument that there hasn't been any new violence since November of 2012, that does not indicate that the underlying issue ─ which is a complicated issue for father with respect to domestic violence -- has been addressed. He has not received any new treatment for it. He ─ and there's nothing within the four corners of the [section] 388 or the attachments that indicates that the domestic violence issue has been significantly addressed such that it would be ─ the situation has now changed.

"I also find that his statement with respect to best interest of the children is based on a lot of assumption and rather conclusory, so I do not find that he's made a prima facie [showing] as to the best interest of the children. So the request for a [section] 388 hearing is denied."

Minors' counsel set the section 366.26 hearing for trial. The father filed a notice of appeal on October 17, 2013.

DISCUSSION

The father contends the court abused its discretion when it denied his request for a hearing on his section 388 petition for failure to make a prima facie showing of changed circumstances. We hold the court did not abuse its discretion because its findings did not demonstrate an arbitrary, capricious, or patently absurd exercise of its discretion.

A.    *Standard of Review*

Petitions under section 388 are construed in favor of their sufficiency. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461.) "[I]f the petition presents *any* evidence that a hearing would promote the best interests of the child, the court must order the hearing. [Citation.]" (*Ibid.*) We review the juvenile court's decision to deny a section 388 hearing for abuse of discretion. (*Id.* at p. 460.)

" 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) " 'When

11

two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.) A reviewing court will not disturb the trial court's exercise of discretion unless the trial court's decision was arbitrary, capricious, or patently absurd. (*In re Stephanie M.*, at p. 318.) "That another court might reasonably have reached a different result on this issue, however, does not demonstrate an abuse of discretion. An abuse of discretion may be found only if ' "no judge could have reasonably reached the challenged result. [Citation.]" ' " (*O'Donoghue v. Superior Court* (2013) 219 Cal.App.4th 245, 269; see also *In re Scott B.* (2010) 188 Cal.App.4th 452, 469.) The father must affirmatively establish an abuse of discretion; it is never presumed. (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423; *In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 749.)

B. *The Court Did Not Abuse Its Discretion*

The father has not met his burden to show the trial court's denial of a hearing was arbitrary, capricious, or patently absurd. Throughout the life of this case, father's two issues were his alcohol abuse and propensity to commit domestic violence. Although the 388 petition indicated that the father had undergone treatment for alcohol abuse, the petition failed to indicate whether he had received treatment for his domestic violence issue. Indeed, from the inception of the case, the father had blamed the mother for their issues and, although he participated in a domestic violence program at one time, he resisted participating in any further domestic violence programs when he reoffended after he completed the first program. Although the father's section 388 petition noted that he

12

had kept his distance from the mother and had sought divorce, it did not show that he had received any treatment for his domestic violence issue since he reoffended. Moreover, despite his physical separation from the mother, the father remained in periodic telephonic contact with her in violation of the restraining order that was in place at the time. In any event, even if the father had ceased all contact with the mother, the fact remains that he had not sought or received treatment for his overall domestic violence issue. Thus, this very serious issue remained an unresolved and unchanged circumstance when the court denied the section 388 petition.

We concur with the trial court's assessment that the father had not made a prima facie showing of changed circumstances and cannot say that " ' "no judge could have reasonably" ' " denied him a hearing on his section 388 petition. (See *O'Donoghue v. Superior Court, supra,* 219 Cal.App.4th at p. 269.) Accordingly, we conclude the court did not abuse its discretion in summarily denying the father's petition.

DISPOSITION

The order is affirmed.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.

13