[No. B232380. Second Dist., Div. One. May 18, 2012.]

WASHINGTON UMBERTO CINEL, Plaintiff and Respondent, v. GEORGE BARNA, Defendant and Appellant.

1384

COUNSEL

Kahdeman Frost and Richard J. Kahdeman for Defendant and Appellant.

Manatt, Phelps & Phillips, Robert H. Platt and Emil Petrossian for Plaintiff and Respondent.

OPINION

JOHNSON, J.—Defendant George Barna appeals from the trial court's denial of his petition to compel arbitration. Previously, in *Cinel v. Christopher* (2012) 203 Cal.App.4th 759 [136 Cal.Rptr.3d 763], we affirmed the trial

court's order refusing to confirm as an "award" the arbitrator's termination of the action for nonpayment of fees of several of the defendants. Barna returned to the trial court to compel arbitration, arguing he had paid his fees. On appeal, Barna argues the trial court erred because it had already determined a valid arbitration agreement existed, and he has not waived or revoked the agreement to arbitrate under Code of Civil Procedure section 1281.2;[1] furthermore, by terminating the arbitration for nonpayment, the panel did not disclaim jurisdiction over the matter. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### 1. *Termination of Arbitration for Nonpayment of Fees*

In December 2006, Cinel, a Brazilian citizen, agreed to purchase 600,000 shares of preferred stock from Good News Holdings, LLC (GNH), for total consideration of $3 million, pursuant to a written "Supplemental Agreement." GNH was formed to create and distribute Christian faith-based and family-friendly content through traditional media. Defendants David Kirkpatrick, George Barna, Christopher Chisholm, Martha Cotton, Thomas Black, and Richard Christopher (defendants) were the founding members of GNH.[3] Cinel made the first three installment payments of $750,000, but became concerned that GNH's financial condition was not as it had been represented in the private placement memorandum (PPM).

On June 30, 2008, Cinel commenced this action for securities fraud and related claims against defendants, and filed his operative first amended complaint (FAC) on November 13, 2008. On March 9, 2009, Barna filed a petition to compel arbitration pursuant to an arbitration clause in the PPM, and on April 3, 2009, the trial court granted the petition to compel arbitration.[4] The parties commenced two separate arbitrations with the AAA because although defendant had commenced arbitration, Cinel felt he should be deemed the claimant in the arbitration. The parties later stipulated to consolidate the two arbitrations.

As of January 11, 2010, the parties had selected a panel of arbitrators. At that time, AAA requested payment of fees from the parties for an initial

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] A portion of our factual statement is taken from a prior appeal in this matter, *Cinel v. Christopher, supra*, 203 Cal.App.4th 759.

[3] Only defendant George Barna is a party to this appeal.

[4] The PPM provided that arbitration of disputes would be subject to the rules of the American Arbitration Association (AAA).

deposit. The AAA advised the parties that "[f]ailure to submit payment by said date may result in the arbitrators suspending the Preliminary Hearing." Of the six defendants, only Christopher and Barna paid their share of the fees. Barna discussed with his counsel the possibility of reducing the panel to one arbitrator to permit the paying parties to advance the nonpaying parties' fees. However, on March 15, 2010, the AAA advised the parties the matter was suspended pending payment of the full amount of fees.[5]

On April 22, 2010, Cinel suggested that if the parties who compelled arbitration, Christopher and Barna, wished to continue, that they pay the fees of the nonpaying parties, and if they did not, that the panel issue an order terminating the arbitration and returning the matter to the superior court. In response, Christopher, joined by Barna, Kirkpatrick and Cotton, argued Cinel's proposal was unfair because Barna and Christopher had complied with the AAA's fee requirements, and Cinel, as a billionaire, had more assets. In his declaration in support of Christopher's response to Cinel's proposal, Barna stated, "I submitted this matter to arbitration based upon the agreement and understanding that I would be paying only a 1/7 equal-share of the arbitrator's fees in this matter along with all other parties that were ordered . . . to participate in the arbitration."

On June 7, 2010, the panel rejected Cinel's proposal, and suggested the paying parties agree to pay a pro rata share of the deposits of the delinquent parties, or that the matter would be terminated. On July 7, 2010, the panel terminated the arbitration due to the nonpayment of fee deposits. On July 16, 2010, Christopher submitted a proposed form of written order to be signed by the panel stating that the arbitration was terminated for nonpayment. On July 19, 2010, the panel refused to sign the order because the panel no longer had jurisdiction over the matter due to its termination for nonpayment of fees.

On July 19, 2010, the panel advised the parties that the matter had been terminated for nonpayment of fees, and that "once the case is marked closed, it may only be reopened for filing by a new Demand for Arbitration, along with the appropriate filing fee."

On November 15, 2010, the trial court reasserted jurisdiction over the case and held a case management conference and set the matter for trial on May

---

[5] The AAA Rules, which the parties incorporated into their arbitration agreement, provide that the expenses of the arbitration "shall be borne equally by the parties, unless they agree otherwise." (AAA Commercial Arbitration Rules and Mediation Procedures, rule R-50; see § 1284.2.) The AAA Rules also provide that if the arbitration expenses are not paid in full, "the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings." (AAA Commercial Arbitration Rules and Mediation Procedures, rule R-54.)

31, 2011. On January 11, 2011, Christopher moved in the trial court to confirm the panel's termination ruling and dismiss Cinel's complaint. On February 7, 2011, the trial court denied Christopher's motion, finding the termination of the arbitration did not constitute an award subject to confirmation. We affirmed this ruling on January 20, 2012, in *Cinel v. Christopher, supra*, 203 Cal.App.4th at page 767.

### 2. *Barna's Petition to Compel Arbitration*

On January 20, 2012, Cinel proposed to defendants that the paying parties advance, on a pro rata basis, the fees of the nonpaying parties. Cinel also proposed that the number of arbitrators be reduced from three to one. In response, Christopher asserted, "Despite numerous suggestions by the arbitrators and his own ample means, between January 22, 2010 and the time that the arbitration was terminated in July of 2010, Mr. Cinel himself never responded to any suggestion from the arbitrators to pay even his pro-rata share of the non-paying parties fees. . . . These activities make it clear that Mr. Cinel has never really had an interest in arbitration at all—rather he preferred to game the system so that the matter could be sent back to Superior Court. Now, when it is clear that there is a real risk that the Superior Court will not be an option, he seeks to go back to arbitration." Christopher declined the offer.

On March 4, 2011, Barna filed a petition to compel arbitration and stay the proceedings, contending that notwithstanding the termination of the arbitration for lack of payment of fees, there remained a valid agreement to arbitrate and a prior court order that the parties proceed to arbitration. He asserted that he had not waived his right to arbitrate because the court, in originally ordering the matter to arbitration in April 2009, specifically found that neither moving party (Christopher or Barna) had waived the right to arbitrate; since then, both Barna and Christopher had enforced their right to arbitrate by submitting their claims to arbitration, paying fees, seeking confirmation of the award, and continuing to seek arbitration. Also on March 4, 2011, Christopher filed a petition to compel arbitration and stay the trial court proceedings.

Cinel opposed, contending that Barna and Christopher had waived their right to arbitrate by failing to pay the fees for the arbitration they had compelled. Further, if the court were to order the matter back to arbitration, he asserted that defendants' nonpayment of fees will again result in the termination of the arbitration, thus depriving him of his right to a ruling on the merits. Contrary to defendants' assertion, Cinel argued he had no obligation to pay defendants' fees; rather, the arbitrator had suggested that Cinel do so, subject to later reallocation.

On March 30, 2011, the court's tentative ruling was to deny the motion to compel arbitration unless the parties agreed to return to arbitration and pay their share of the nonpaying parties' fees. The court admonished the paying parties to "work it out," or the matter would proceed to trial. The court continued the hearing to April 11, 2011, to determine whether the parties could resolve the payment issue. On April 11, 2011, Barna advised the court he did not have the funds to pay for the nonpaying parties to the arbitration. The court denied the motion to compel.

## DISCUSSION

Barna argues the trial court had already determined a valid arbitration agreement existed, and he has not waived or revoked the agreement to arbitrate under section 1281.2; furthermore, by terminating the arbitration for nonpayment, the panel did not disclaim jurisdiction over the matter. We disagree.

■ Arbitration is a creature of contract. Hence, arbitration "only comes into play when the parties to the dispute have agreed to submit to it." (*Herman Feil, Inc. v. Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1414 [251 Cal.Rptr. 895].) Although the law favors agreements for arbitration of disputes, " ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744 [222 Cal.Rptr. 1, 710 P.2d 833].)

■ Under section 1281.2, the court shall order a matter to arbitration if it determines that there is an agreement to arbitrate and (1) the agreement has not been waived or (2) the agreement has not been revoked. (§ 1281.2, subds. (a), (b).) Grounds for revocation include fraud, duress, and unconscionability. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1746].) Revocation issues are not present here.

■ Rather, defendants have waived their right to arbitrate by refusing to reach a resolution with Cinel on the fee dispute. Contractual rights are subject to waiver, and waiver may be express or implied by the parties' conduct. (§ 1281.2; *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195, fn. 4 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes*).) In the arbitration context, waiver does not require relinquishment of a known right, but arises from a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right to arbitration. (*St. Agnes*, at p. 1195, fn. 4.) There is a presumption against waiver, and the party seeking to demonstrate waiver bears a heavy burden of proof. (*Id.* at p. 1195.) A party seeking to prove waiver of a right to arbitration must show

" '(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration . . . .' " (*U.S. v. Park Place Associates, Ltd.* (9th Cir. 2009) 563 F.3d 907, 921.) Acts inconsistent with the right to arbitrate include (1) "pursuing a lawsuit on the same issue as [the issue] to be arbitrated," (2) "expressly repudiating the arbitration agreement," or (3) "failing to invoke the right to arbitration . . . ." (*Service Employees Internat. Union, Local 1021 v. County of San Joaquin* (2011) 202 Cal.App.4th 449, 460 [135 Cal.Rptr.3d 844] (*Service Employees*).)

■ "[A] contract may be breached by nonperformance, by repudiation, or a combination of the two. [Citation.] [¶] A repudiation may be express or implied." (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 514 [75 Cal.Rptr.3d 771], fn. omitted.) ■ Implied repudiation occurs where conduct of the promisor puts it out of his or her power to perform the contract, and consists of a voluntary act rendering the obligor without the capacity to perform without a total breach. Breach by repudiation is often referred to as " 'anticipatory breach.' " (*Ibid.*) In the arbitration context, it is grounds for a finding of waiver of the arbitration agreement. (*Service Employees, supra*, 202 Cal.App.4th at p. 460.)

"[N]o single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes, supra*, 31 Cal.4th at p. 1195.) We determine whether the trial court's findings are supported by substantial evidence. (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1452 [110 Cal.Rptr.3d 104]; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211 [69 Cal.Rptr.2d 79].)

■ Here, by refusing to agree among themselves to pay the fees of the nonpaying parties, both plaintiff and defendant Barna[6] have waived the arbitration agreement by their collective and simultaneous repudiation of it through their refusal to reach an agreement as ordered by the arbitrator over the payment of fees. The panel, under the authority of the AAA rules, ordered the parties to split the fees of the nonpaying parties; when the paying parties refused to do so, the arbitration was terminated. By failing to come to an agreement that would permit them to proceed with the arbitration, the parties have collectively waived their right to arbitrate. Unless and until the parties agree to pay the pro rata share of the nonpaying parties per the panel's order, there can be no arbitration.

---

[6] Although Christopher is not a party to this appeal, it would appear that he has also waived his right to invoke arbitration by refusing to pay the pro rata fees of the nonpaying defendants.

As a consequence, Barna may not unilaterally assert the right to arbitration because he has waived his right to claim the benefits of the agreement. Nor can Barna force Cinel to pay anything other than his pro rata share, as ordered by the panel, of the nonpaying parties' fees. (See, e.g., *Lifescan, Inc. v. Premier Diabetic Services* (9th Cir. 2004) 363 F.3d 1010, 1013 [where arbitrators acted within their discretion in apportioning the fees, the trial court erred in ordering party to pay other party's fees].) Finally, Barna cannot use the nonpaying parties as a proxy to extort payment of the entire amount of the nonpaying parties' fees from Cinel, who did not demand arbitration in the first place.

*Sink v. Aden Enterprises, Inc.* (9th Cir. 2003) 352 F.3d 1197 (*Sink*), is illustrative of the infinite loop this case will enter if we endorse Barna's arguments. *Sink* was a case under the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.). Plaintiff Sink sued his employer Aden Enterprises, Inc. (Aden), and the matter proceeded to arbitration pursuant to Sink's employment agreement. (352 F.3d at p. 1198.) Aden was obligated to pay the arbitration costs but refused to do so, and the arbitrator cancelled the proceedings due to nonpayment of fees. (*Id.* at p. 1199.) The plaintiff obtained a default from the arbitrator, and returned to the trial court and sought to have default judgment entered in the underlying litigation. After the court refused to enter default judgment, Aden advised the court it had obtained the money needed to fund the arbitration, and made an oral motion to refer the matter back to the arbitration. The trial court refused, finding Aden was in default of the arbitration and had waived its arbitration rights and set the matter for trial. (*Ibid.*) The *Sink* court affirmed the finding of default, and found that because of the default, Aden could no longer compel arbitration. (*Id.* at p. 1200.) *Sink* observed that "[a]ccepting Aden's reading of the FAA would also allow a party refusing to cooperate with arbitration to indefinitely postpone litigation. Under Aden's interpretation, the sole remedy available to a party prejudiced by default would be a court order compelling a return to arbitration. The same offending party could then default a second time, and the prejudiced party's sole remedy, again, would be another order compelling arbitration. This cycle could continue, resulting in frustration of the aggrieved party's attempts to resolve its claims." (*Id.* at p. 1201.) Here, Barna could compel a return to arbitration only to refuse to pay what the panel has ordered, resulting in another termination for nonpayment of fees. We decline to endorse such a result.

As we conclude the parties have waived their right to return to the arbitration forum, we need not consider whether or not the panel's jurisdiction over the matter was terminated.

## DISPOSITION

The order is affirmed. Respondent is to recover his costs on appeal.

Rothschild, Acting P. J., and Chaney, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 22, 2012, S203639.