Filed 10/8/20  Fraser v. RV Country, Inc. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PATRICK FRASER et al., Plaintiffs and Respondents, v. RV COUNTRY, INC., et al., Defendants and Appellants. | F080279 (Super. Ct. No. 19CECG01717) OPINION |

THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Alan M. Simpson, Judge.

Fine, Boggs & Perkins, Michael K. Perkins and William D. Wheelock for Defendants and Appellants.

Whelan Law Group and Brian D. Whelan for Plaintiffs and Respondents.

-ooOoo-

An employer appeals from an order denying its motion to compel arbitration of a dispute with two employees.  We conclude the trial court correctly determined the

---

[*]        Before Levy, Acting P.J., Franson, J. and Peña, J.

employer waived any contractual right it had to compel arbitration when it entered into a joint stipulation with one of the employees. A recital in the joint stipulation stated the parties wished to proceed with the employees' civil action in the superior court instead of before the Division of Labor Standards Enforcement (DLSE) without prejudicing in any way the employees' claims or rights. In exchange for the employee's dismissal of his DLSE complaint, the employer agreed "that it will not raise any defenses of any kind nor arguments of any kind against either [employee's] claims … in the civil action" pending in the superior court. The joint stipulation also stated the "[d]ismissal of the DLSE Complaint will not be admissible for any purpose *at trial* in this case. Again, the dismissal of the DLSE Complaint … will not adversely impact in any way the Plaintiffs *in this lawsuit*." (Italics added.)

Applying an objectively reasonable layperson standard to the language used in the joint stipulation, we conclude arbitration qualifies as a defense or argument for purposes of the phrase "any defenses of any kind nor arguments of any kind" and, therefore, the employer agreed it would "not raise" any purported right to arbitration "in the civil action." This agreement constitutes a waiver of any right to compel arbitration. (Code Civ. Proc., § 1281.2, subd. (a) [right to compel arbitration may be waived].)[1]

We therefore affirm the order denying the motion to compel arbitration.

### FACTS AND PROCEEDINGS

From 2003 to 2007, plaintiff Patrick Fraser worked for defendant RV Country, Inc. as a salesperson. After working elsewhere, he returned to RV Country, Inc. in 2008 and continued working there until his termination on August 20, 2018. Fraser was compensated solely on a commission basis.

---

[1] All further statutory references are to the Code of Civil Procedure.

2.

In May 1991, plaintiff Jerold Wight began his employment with RV Country, Inc. At the start of this litigation, Wight still was employed by RV Country, Inc. as a salesperson. Wight also was compensated on a commission basis.

In January 2019, Fraser filed a complaint with the DLSE alleging that he had earned and was not paid commissions in the amount of $300,000 for the period from November 30, 2015 through the date of his termination. Fraser filed the DLSE complaint on his own and then hired an attorney to help him with that matter and to initiate a lawsuit.

In April 2019, RV Country, Inc. submitted an answer to Fraser's DLSE complaint. RV Country, Inc. stated its records did not show any wages or commissions were due and that it did not know how Fraser calculated the amount claimed.

In May 2019, plaintiffs filed a complaint in Fresno County Superior Court against RV Country, Inc., a California corporation; Charles E. Curtis, the president and an owner of the corporation; and Oasis Outsourcing III, Inc., a Florida corporation (Oasis). Plaintiffs alleged RV Country, Inc., Curtis and Oasis were their joint employers. Plaintiffs alleged that Oasis was the entity that appeared as their employer on their 2017 and 2018 tax records. The complaint alleged defendants miscalculated the sales commission earned by plaintiffs and, as a result, underpaid the compensation owed.

On June 24, 2019, plaintiffs filed a first amended complaint, which is the operative pleading for purposes of this appeal. The first amended complaint included causes of action for (1) breach of contract, (2) open book account, (3) account stated, (4) violating Labor Code section 226's requirement that employers furnish accurate wage statements, (5) waiting time penalties under Labor Code sections 201 through 203, (6) negligence, (7) failure to reimburse expenses, (8) unfair competition based on nonpayment of wages, (9) violating the 30-minute meal break requirement of Labor Code section 226.7, (10) violating the rest break requirement of Labor Code section 226.7, and (11) penalties

under various Labor Code provisions. The prayer for relief sought compensatory damages of not less than $2.4 million.

In July 2019, the DLSE served the parties with a notice stating a hearing would be held in Fresno on August 15, 2019. In early August 2019, defendants, Fraser, and counsel for all parties executed a "JOINT STIPULATION RE WAIVER OF DEFENSES BASED ON THE DISMISSAL OF PATRICK FRASER'S DLSE COMPLAINT" that included a recital stating "the Parties wish to proceed with the Plaintiffs' civil action in the Superior Court instead of before the DLSE without prejudicing in any way Plaintiffs' claims or rights." The joint stipulation stated the parties agreed that Fraser would "dismiss his DLSE Complaint against RV Country Inc. without prejudice … in exchange for RV Country Inc.'s agreement that it will not raise any defenses of any kind nor arguments of any kind against either Fraser's claims or Wight's claims in the civil action." They further agreed that the dismissal would not serve as a bar against any current or future claims that either Fraser or Wight "may now or ever choose to advance against any of the named parties in this lawsuit including Doe Defendants."

On August 12, 2019, defendants filed a petition to compel arbitration and stay proceedings in the superior court. Defendants' petition asserted plaintiffs entered into agreements to submit any legal dispute with defendants to binding arbitration for resolution, the agreements had been memorialized in writing, and each plaintiff executed the document by electronic signature. In particular, defendants alleged that on November 16, 2016, Fraser executed by electronic signature a document entitled "Employee Acknowledgements" that contained an arbitration agreement. Defendants alleged Wight also executed an arbitration agreement on the same day and in the same manner.

In October 2019, Oasis was dismissed from the lawsuit. The other defendants continued to pursue the petition to compel arbitration. Plaintiffs filed an opposition to the petition to compel arbitration along with supporting declarations from Fraser, Wight and their attorney. Fraser and Wight asserted they had not been presented with, and had not

4.

signed, an arbitration agreement. Wight stated that he had never seen the agreement presented as part of defendants' petition to compel arbitration and he did not sign it, electronically or otherwise. Referring to the joint stipulation, Fraser stated he would not have given up his right to the expedient process of the DLSE hearing if he had known that RV Country, Inc. would claim, falsely, that all of his claims needed to be resolved in arbitration. Fraser stated he understood that RV Country, Inc. had committed to a jury trial and he believed he had been deceived into dismissing his complaint before the DLSE.

Near the end of October 2019, the trial court issued a tentative ruling denying the petition to compel arbitration. Defendants requested oral argument. On October 30, 2019, a hearing was held. The court heard argument, took the matter under submission, conducted further review, and issued a law and motion minute order adopting its tentative ruling as its final order. The ruling stated defendants' petition to compel arbitration was denied and the defendants' objections to the evidence plaintiffs submitted in support of their opposition to the petition were overruled. The court specifically found "defendants waived their right to compel arbitration when they agreed, in writing, to proceed in Superior Court." Five days later, defendants filed a timely appeal.

## DISCUSSION

### I. CALENDAR PREFERENCE

California has a " 'long-established and well-settled policy favoring arbitration as a speedy and inexpensive means of settling disputes. [Citation.] This policy is reflected in the comprehensive statutory scheme set out in the California Arbitration Act. (§ 1280 et seq.)' " (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 146 (*Rockefeller*).) A purpose of the California Arbitration Act " 'is to promote *contractual arbitration*, in accordance with

5.

this policy, as a more expeditious and less expensive means of resolving disputes than by litigation in court.' " (*Ibid.*)

Typically, parties entering into an arbitration agreement expect that any subsequent dispute will be resolved without going to court. (*Rockefeller*, *supra*, 9 Cal.5th at p. 146.) However, the California Arbitration Act recognizes this expectation is not always met and the parties may end up in court. To expedite those court proceedings, the statute provides:

> "In all proceedings brought under the provisions of this title, all courts wherein such proceedings are pending shall give such proceedings preference over all other civil actions or proceedings, except older matters of the same character and matters to which special precedence may be given by law, in the matter of setting the same for hearing and in hearing the same to the end that all such proceedings shall be quickly heard and determined." (§ 1291.2.)[2]

Despite the mandatory language in section 1291.2, counsel for defendants did not mark the box for item II.B. on mandatory Judicial Council form APP-004, Civil Case Information Statement. The text following that box states in full: "This appeal is entitled to calendar preference/priority on appeal (*cite authority*)." (See Bus. & Prof. Code, § 6068, subd. (d) [duty of attorney in making representations of fact or law to the court].)

As for plaintiffs' counsel, they did not file a motion for preference under California Rules of Court, rule 8.240. However, the rule's Advisory Committee comment states the rule's mandatory language "is not intended to bar the court from

---

**2**      Legislative directives granting priority to certain matters and requiring the proceedings be conducted as speedily as possible are a common feature of procedural statutes. (*Briggs v. Brown* (2017) 3 Cal.5th 808, 848.) Witkin provides a partial list of preference-granting statutes. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 764, pp. 836–838 [statutory preferences and advancement]; see *Briggs*, *supra*, at p. 848, fn. 24 [list of statutes]; e.g., § 44 [preference on appeal for probate proceedings, election contests and certain defamation cases].) We note that the California Environmental Quality Act (Pub. Res. Code, § 21000 et seq.) includes a provision using language similar to section 1291.2. (See Pub. Res. Code, § 21167.1, subd. (a).)

ordering preference without a motion when the ground is apparent on the face of the appeal." Because this appeal involves the enforcement of an arbitration clause, it clearly falls with the scope of section 1291.2's mandatory language. Therefore, we have treated it "as a preference matter as required by statute." (*Hedges v. Carrigan* (2004) 117 Cal.App.4th 578, 582.)

## II.     FORMATION OF AN AGREEMENT TO ARBITRATE

Defendants contend the trial court erred by not deciding the threshold issue of whether the parties in fact agreed to arbitrate the disputes. Defendants argue this determination is the trial court's essential first task and the failure to perform that task requires a remand directing the trial court to fulfill its role as trier of fact and determine whether the parties agreed to arbitrate the dispute.

This remand request borders on the frivolous because it ignores the constitutional requirement that an appellant demonstrate prejudice to establish reversible error. California's doctrine of reversible error requires appellants to affirmatively demonstrate "the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) In civil cases, the "miscarriage of justice" standard is satisfied when there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. (*Harb v. City of Bakersfield* (2015) 233 Cal.App.4th 606, 617; see *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1051 [doctrine of reversible error requires appellant to establish prejudice].)

Here, the appellate record does not demonstrate a miscarriage of justice. Indeed, it affirmatively demonstrates the opposite—that is, defendants would not have received a more favorable result if the agreement formation issue had been decided in their favor. Specifically, the record shows that if defendants had a contractual right to arbitration of the dispute, the trial court would have denied their motion to compel arbitration on the

7.

ground defendants had waived that contractual right. As a result, defendants were not prejudiced when the trial court decided a single, pivotal issue.

## III. WAIVER OF CONTRACTUAL RIGHT TO ARBITRATE

Defendants also claim the trial court erred in finding defendants waived any right to compel arbitration of plaintiffs' claims because plaintiffs failed to meet their heavy burden of establishing a waiver. As background for our analysis of this purported error, we set forth the rules of law that define waiver in the context of an arbitration agreement and the principles that govern the interpretation of a stipulation.

### A. Basic Principles

Section 1281.2 provides that a written agreement to arbitrate a dispute is enforceable by a petition to compel arbitration. When an arbitration agreement covers a dispute, the court shall order the parties to arbitration unless it determines "[t]he right to compel arbitration has been waived by the petitioner" or there are grounds for revocation of the agreement. (§ 1281.2, subds. (a), (b).) In *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*) and *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951 (*Engalla*), the Supreme Court set forth several legal conclusions relating to this statutory waiver provision.

#### 1. Defining Waiver

First, a waiver under subdivision (a) of section 1281.2 is not limited to a voluntary relinquishment of a known right. (*Engalla*, *supra*, 15 Cal.4th at p. 983.) Instead, waiver extends to other circumstances that are not dependent upon the intent to relinquish the right to arbitrate. (*Ibid*.; *St. Agnes*, *supra*, 31 Cal.4th at p. 1195, fn. 4.) As a result, under state and federal law, "no single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes, supra,* at p. 1195.) Thus, waiver of arbitration may be expressed in words or implied from the petitioner's conduct. (*Cinel v. Barna* (2012) 206 Cal.App.4th 1383, 1389.)

8.

Second, the relevant factors that are properly considered in assessing a waiver claim include (1) whether the petitioner's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the petitioner notified the opposing party of an intent to arbitrate; (3) whether the petitioner sought to enforce the right to arbitrate close to the trial date or sought a stay after a lengthy delay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps such as invoking judicial discovery procedures not available in arbitration had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) Most of these factors are relevant to whether to *infer a waiver from a party's conduct* and do not bear directly on interpreting a written agreement that purportedly waives the right to arbitration.

Third, the assessment of the foregoing factors is informed by the principle that a waiver is not inferred from a party's mere participation in litigation prior to a judgment on the merits unless the party opposing arbitration has demonstrated prejudice in some form other than incurring court costs and legal expenses. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) Typically, prejudice is established where the petitioner's conduct has substantially impaired the public policy underlying arbitration or substantially impaired the opposing party's ability to take advantage of the benefits and efficiencies of arbitration. (*Id*. at p. 1204.)

### 2. Procedural Aspects of Proving Waiver

The trial court has jurisdiction to decide the waiver question when petitioned to compel arbitration. (*Engalla*, *supra*, 15 Cal.4th at p. 982.) Thus, the waiver question is not decided by an arbitrator. A petition to compel arbitration is resolved in a summary proceeding where the trial court sits as the trier of fact. (*Id*. at p. 972.) The determination

9.

of whether a waiver occurred generally is a question of fact. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) Where the facts are undisputed and only one reasonable inference can be drawn from those facts, the determination of waiver is a question of law. (*Ibid.*)

The party opposing a petition to compel arbitration "bears the burden of proving by a preponderance of the evidence any fact necessary to its defense," which includes waiver. (*Engalla*, *supra*, 15 Cal.4th at p. 972.)[3] Notwithstanding the preponderance of the evidence standard of proof set forth in *Engalla*, our Supreme Court has stated that waivers of the right to arbitration "are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof. [Citations.]" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) In *St. Agnes* and the cases cited therein for this principle, the issue was whether to infer a waiver based on the petitioner's conduct—specifically, its participation in litigation. Viewed in that context, we interpret the statement in *St. Agnes* as applying to cases involving a waiver inferred from a party's conduct during the litigation and not as replacing or modifying the principles used to interpret a bilateral, written agreement that purportedly waived a party's right to arbitration in exchange for other consideration.

### 3. Standard of Review

When an appellate court reviews a trial court's factual findings relating to waiver, it determines whether those findings are supported by substantial evidence. (*Engalla*, *supra*, 15 Cal.4th at p. 983.) Conversely, where the trial court's waiver determination resolves a question of law, the appellate court conducts a de novo review without deference to the trial court's determination. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

---

[3] Thus, a party contending the right to arbitrate was waived is not subject to the rule of law specifying the standard for proving a waiver in other contexts. Under that rule, the party claiming a waiver of a right has the burden of proving it by clear and convincing evidence. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31; see Evid. Code, 115 [burden of proof].)

B.    Principles Governing Interpretation of the Stipulation

When a court interprets a stipulation, "the rules applied are those applied to the interpretation of contracts."  (*Harris v. Spinali Auto Sales, Inc.* (1962) 202 Cal.App.2d 215, 219.)  "It is not the province of the court to add to the provisions thereof [citations]; to insert a term not found therein [citations]; or to make a new stipulation for the parties."  (*Ibid*.)  In this appeal, defendants acknowledge that stipulations are construed as any other contract and quote *Cuenca v. Cohen* (2017) 8 Cal.App.5th 200 (*Cuenca*) for the following principles.  First, the interpretation of a contract presents a question of law unless the interpretation turns on the credibility of extrinsic evidence.  (*Id*. at p. 222.)  Where a question of law was decided, the appellate court conducts a de novo review.  (*Ibid*.)  Second, the mutual intention of the parties at the time the contract is formed governs its interpretation.  (*Ibid*.; see Civ. Code, § 1636.)  Third, if possible, such intent is to be inferred solely from the written provisions of the contract.  (*Cuenca*, *supra*, at p. 222; see Civ. Code, § 1639.)  Fourth, the language of the contract governs its interpretation where the language is clear and explicit.  (Civ. Code, § 1638; *Cuenca*, *supra*, at p. 222.)  Fifth, the words of the contract are given their ordinary and popular meaning, unless the parties have used them in a technical sense.  (Civ. Code, § 1644, *Cuenca*, *supra*, at p. 222.) Sixth, " 'if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.' "  (*Cuenca*, *supra*, at p. 222.)

The principles of contract interpretation identified in defendant's brief are not the only principles we consider when determining the meaning of the joint stipulation.  Other principles of California contract law apply.  For instance, the existence of mutual consent (i.e., mutual intent) generally is determined by applying an objective standard to the outward manifestations or expressions of the parties and ascertaining the reasonable meaning of their words and their conduct.  (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141; see Civ. Code, § 1581.)  Thus, evidence of a party's unexpressed intentions or expectations is irrelevant to determining the meaning of

11.

contractual language.  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166, fn. 3.)  Also, California's objective standard refers to what a reasonable person would be led to believe by the outward manifestations or expressions of the parties.  (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208.)  Thus, California contract law holds a party responsible for the objectively reasonable expectations created by the words and actions communicated to the other party.  (*Merced County Sheriff's Employee's Assn. v. County of Merced* (1987) 188 Cal.App.3d 662, 670.)  Based on this objective standard, we interpret the reference in *Cuenca* to "the meaning a layperson would ascribe to contract language" to mean a hypothetical reasonable layperson is used to determine the meaning of the parties' expressions, not an attorney or a person with specialized training.  (See *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 471; see *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807.)

### C.     Determination of Joint Stipulation's Meaning

#### 1.     Words Used

In accordance with the principle that the parties' mutual intent is to be inferred, if possible, solely from the written provisions of the contract, we begin by setting forth the relevant written provisions of the stipulation.  (*Cuenca*, *supra*, 8 Cal.App.5th at p. 222; see Civ. Code, § 1639.)  The stipulation was titled "JOINT STIPULATION RE WAIVER OF DEFENSES BASED ON THE DISMISSAL OF PATRICK FRASER'S DLSE COMPLAINT" and was signed by defendants, Fraser, and counsel for all parties.

The first three recitals describe Fraser's DLSE complaint, plaintiffs' lawsuit, and the August 15, 2019 hearing set by the DLSE.  The fourth recital states "the Parties wish to proceed with the Plaintiffs' civil action in the Superior Court instead [of] before the DLSE without prejudicing in any way Plaintiffs' claims or rights."  Following the recitals, the parties agreed:

> "Fraser will dismiss his DLSE Complaint against RV Country Inc. without prejudice by no later than August 14, 2019, in exchange for RV Country

12.

Inc.'s agreement that it will not raise any defenses of any kind nor arguments of any kind against either Fraser's claims or Wight's claims in the civil action. Further, Fraser's dismissal of the DLSE complaint will not serve as a bar, collateral estoppel, res judicata, or retraxit against any current or future claims that either Fraser or Wight may now or ever choose to advance against any of the named parties in this lawsuit including Doe Defendants. Dismissal of the DLSE Complaint will not give rise to payment to Defendant parties of any sums of money for costs or fees. Dismissal of the DLSE Complaint will not be admissible for any purpose at trial in this case. Again, the dismissal of the DLSE Complaint by Fraser will not adversely impact in any way the Plaintiffs' in this lawsuit."

As noted by defendants, the joint stipulation makes no explicit reference to arbitration whatsoever. In particular, it does not (1) mention the existence of an agreement to arbitrate or (2) state any party waived the right to compel arbitration. The only place the term waiver or any of its variants appear is in the stipulation's title. Conversely, the parties did not explicitly stipulate to having the question of arbitration raised and resolved in the superior court.

Initially, we conclude an explicit provision stating defendants "waived" any right to compel arbitration is not the exclusive way to express an intent to relinquish the right to compel arbitration of the dispute. Other words could express that intent. For example, an agreement stating the parties intend to resolve the merits of their dispute in court necessarily implies they do not intend to arbitrate the merits of the dispute.

### 2. *Analysis of the Stipulation's Text*

Here, the joint stipulation sets forth "RV Country Inc.'s agreement that it will not raise any defenses of any kind nor arguments of any kind against either Fraser's claims or Wight's claims in the civil action." First, we consider the verb phrase "will not raise." We conclude an objectively reasonable layperson would interpret this phrase to mean that the party has waived (i.e., relinquished) the items following that phrase. Interpreting the phrase as waiving the items following it is consistent with the use of the term "WAIVER OF DEFENSES" used in the joint stipulation's title. (See Civ. Code, § 1641 [contract

13.

must be read as a whole]; CACI No. 317 [in deciding the meaning of a contract's word, the jury "should consider the whole contract, not just isolated parts"].)

Having concluded that defendants waived something, our next task is to determine whether that something encompasses arbitration. The items waived are identified by the phrase "any defenses of any kind nor arguments of any kind" and the extent of the waiver is limited by the clause "against either Fraser's claims or Wight's claims in the civil action." Based on this contractual language, we consider whether an objectively reasonable layperson would conclude the right to arbitrate is a "defense" or "argument" "against" plaintiffs' claims "in the civil action."

The noun "defense" is defined to mean "the act or action of defending"; "a defendant's denial, answer or plea"; "an argument in support or justification" and "the collected facts and method adopted by a defendant to protect himself against a plaintiff's action." (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 302, col. 1.)[4] The word "argument" means "a reason given in proof or rebuttal" and a "discourse intended to persuade." (Merriam-Webster's Collegiate Dict., *supra*, p. 62, col. 1.) The stipulation modifies both "defenses" and "arguments" with the prepositional phrase "of any kind." "[T]he word 'any' is defined to mean 'of whatever kind' or 'without restriction.' (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 53, col. 1.)" (*Zabrucky v. McAdams* (2005) 129 Cal.App.4th 618, 628.)

We conclude the foregoing are ordinary and popular meanings of "defense," "argument" and "any" that an objectively reasonable layperson would adopt in construing the joint stipulation. Furthermore, we conclude that in the context of this case, the word

---

**4** The California Supreme Court has stated that "[w]hen attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122.) We recognize, of course, that the process of interpreting a contract involves more than looking up dictionary definitions and stitching together the results. (See *Hodges v. Superior Court* (1999) 21 Cal.4th 109, 113.)

14.

"against" and the phrase "either Fraser's claims or Wight's claims in the civil action" are unambiguous. They refer to defenses and arguments raised in opposition to plaintiffs' causes of action in Fresno County Superior Court case No. 19CECG01717.

Applying these definitions to the circumstances presented, we conclude defendants' attempt to compel arbitration of the dispute was an attempt to prevent the dispute from being resolved in the superior court civil action. Thus, defendants' petition to compel arbitration "raise[d]" a "defense" or "argument" against plaintiffs' claims in the civil action. Stated another way, defendants' assertion of the right to arbitrate constitutes "an argument in support [of] or justification" for stopping plaintiffs' civil action (Merriam-Webster's Collegiate Dict., *supra*, p. 302, col. 1 [definition of defense]) and is a "reason given in … rebuttal" of plaintiffs' right to proceed with the lawsuit (Merriam-Webster's Collegiate Dict., *supra*, p. 62, col. 1 [definition of argument].)

Defendants argue this provision of the joint stipulation should be limited solely to defenses based on Fraser's dismissal of his DLSE complaint. This contention contradicts the plain language of the provision, which refers to "any" defense or argument and does not include the limitation defendants are attempting to insert. Defendants' assertion that "there is no competent evidence in the record suggesting that waiver of arbitration was ever contemplated by the parties" overlooks the verb phrase "will not raise" and the repeated use of the word "any" in describing the defenses and arguments that would not be raised. The general term "any" is broad and encompasses the defense of arbitration even without a specific reference to arbitration or the right to arbitrate.[5]

Our view of the objective meaning of the words used in the joint stipulation is supported by more than dictionary definitions. The idea that the assertion of the right to

---

[5]    This interpretation of "any" has not been directly addressed by defendants. For instance, defendants have cited no authority interpreting the word "any" in a fashion that would result in the phrase "*any* defenses of *any* kind" to mean "defenses of whatever kind except arbitration."

arbitrate is a "defense" has existed in California case law for at least 60 years. In 1956, our Supreme Court referred to "a waiver of the right to insist on arbitration *as a defense* to an action on the contract." (*Local 659, I.A.T.S.E. v. Color Corp. Amer.* (1956) 47 Cal.2d 189, 195, italics added; see *Brunzell Constr. Co. v. Harrah's Club* (1967) 253 Cal.App.2d 764, 779 [quoting same].) Similarly, a secondary authority addressing affirmative defenses treats the right to arbitrate as a defense. (3 Schwing & Carr, California Affirmative Defenses (2019) ch. 68, pp. 339–435.) Section 68:12 of chapter 68 of *Schwing & Carr* is titled "Waiver of *Defense*." (*Id*. at p. 423, italics added.) In this title, defense refers to the right to arbitrate a dispute.

In summary, we conclude the agreement not to "raise any defenses of any kind nor arguments of any kind against either Fraser's claims or Wight's claims in the civil action" constitutes of waiver of any contractual right to compel arbitration of the claims of Fraser or Wight.

D.  Prejudice to Plaintiff

Defendants cite *St. Agnes* and *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 for the principles that a party opposing a petition to compel arbitration must establish prejudice will result if the waiver is not enforced. In *Iskanian*, the court stated: "We have said that 'prejudice … is critical in waiver determination.' (*St. Agnes Medical Center*, *supra*, 31 Cal.4th at p. 1203.)" (*Iskanian*, *supra*, at pp. 376–377.) *Iskanian*, like *St. Agnes* and the cases cited in *St. Agnes* to support the statement about prejudice, involves a claim of waiver based on a party's conduct during litigation. These cases did not involve the interpretation of a written agreement in which the right to arbitrate is relinquished in a bargained for exchange. As a result, those cases do not stand for a principle limiting the parties' freedom of contract. More specifically, those cases do not hold that a contractual agreement to proceed in court overrides an earlier agreement to arbitrate if and only if the party seeking to enforce the agreement to proceed in court

16.

would be prejudiced by being required to arbitrate.  "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered."  (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2; see generally, 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 509, pp. 572–573 [*ratio decidendi* and *dicta*].)  Consequently, we conclude that an agreement to proceed in court rather than arbitrate a dispute is enforceable even if the party attempting to proceed with the civil action has not shown he or she would be prejudiced if required to arbitrate the dispute.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)