**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 23, 2020**

# In the Court of Appeals of Georgia

A20A1132. EPPS et al. v. ROCKMO ENTERTAINMENT, LLC.

BROWN, Judge.

Rockmo Entertainment, LLC ("Rockmo") filed this breach of contract action against Tauheed Epps p/k/a 2 Chainz, David Leeks, and W. L. L. & Associates (collectively "appellants"),[1] and the trial court issued an order compelling arbitration in accordance with the parties' agreement. After Rockmo initiated arbitration and appellants refused to pay the fees for three arbitrators, Rockmo filed a motion to reinstate the case in the trial court. The trial court granted the motion, finding that appellants' refusal to pay their portion of the arbitrators' fees waived their right to

---

[1] Rockmo also named as defendants Johnnie Cabbell, New Era Talent Agency, Felix Murray, and Felix Murray Entertainment. These defendants are not parties to this appeal.

arbitration. We granted appellants' application for interlocutory appeal of the trial court's order and now affirm.

On appeal from a trial court's denial of a motion to compel arbitration, we review the record de novo to determine whether the trial court's denial is correct as a matter of law. *Schinazi v. Eden*, 351 Ga. App. 151, 156 (830 SE2d 531) (2019). "However, we defer to the trial court's findings of fact upon which its denial was based unless those findings are clearly erroneous." Id. While we are not reviewing an order denying a motion to compel arbitration, but rather an order granting a motion to reinstate the case after arbitration, we believe the same standard applies.

In 2013, Epps, a rap artist who goes by the name of 2 Chainz, and Rockmo entered into an agreement pursuant to which Epps would perform at Wild Bill's on May 11, 2013, in exchange for $65,000. The agreement contained a provision prohibiting Epps from performing within 100 miles in the two weeks before or after the performance. It also provided that Epps could not advertise for any show in Atlanta scheduled within 30 days after his performance until *after* his performance at Wild Bill's. Any disputes arising from the agreement were to be submitted to arbitration:

2

b. All claims and disputes which may arise between Purchaser, Artist, and/or the Agent regarding the interpretation of any of the terms and conditions of this contract, including any disputes between the parties as to their obligations and responsibilities hereunder, shall be referred exclusively to binding arbitration. If a claim or dispute arises between the parties, then such claim or dispute shall be referred to the American Arbitration Association.

c. Any controversy or claim arising out of or relating to this Agreement or the breach thereof, shall be resolved by binding arbitration, in accordance with the rules as they may be amended. Such rules and procedures are incorporated herein and made a part of this Agreement by reference. The parties agree that they will abide by and perform any award rendered in any such arbitration and that any court having jurisdiction may issue a final judgment based upon any such award.

According to Rockmo's complaint, Epps, in violation of the parties' agreement, subsequently agreed to and promoted another live performance at Mansion Elan scheduled for the same date as his performance at Wild Bill's. Epps went through with both engagements, and Rockmo filed the instant action in March 2015, alleging breach of contract, fraud, and unjust enrichment as well as claims for punitive damages and attorney fees. Appellants filed an answer and asked the trial court to compel arbitration based on the parties' agreement. In March 2016, the trial court

3

issued an order finding the arbitration clause in the contract to be "unambiguous and enforceable," and staying the case pending arbitration.

In September 2018, two and a half years after the trial court's order, Rockmo filed a demand for arbitration with the American Arbitration Association ("AAA") and paid the required filing fee. The demand alleged that Rockmo's claims amounted to $1.8 million. Appellants claim that in the next six months, they answered the arbitration demand, asserted a counterclaim, attended multiple pre-hearing conferences, and participated in the arbitrator selection process.[2]

Based on the amount of damages claimed in Rockmo's demand, the AAA designated the case as a large, complex commercial case subject to certain rules. Pertinent to this issue, AAA Commercial Arbitration Rule L-2 provides:

> (a) Large, complex commercial cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. With the exception in paragraph (b) below, if the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

---

[2] These documents are not part of the record before us.

(b) In cases involving the financial hardship of a party or other circumstance, the AAA at its discretion may require that only one arbitrator hear and determine the case, irrespective of the size of the claim involved in the dispute.

AAA Commercial Arbitration Rules L-2 (a)-(b). Because the parties had not specified the number of arbitrators in their agreement or mutually agreed on the number, the AAA, consistent with Rule L-2 (a), required a panel of three arbitrators to hear the case.[3]

While Rockmo paid its half of the arbitrators' fees, appellants declined to pay their portion, contending that the AAA's designation of the case as large, complex commercial was "improper" because it was legally impossible for Rockmo to recover $1.8 million in damages from its claims. Appellants requested that the AAA re-designate the case as a general commercial dispute or alternatively that a single arbitrator be appointed to determine which rules should govern the arbitration and thus decide the number of arbitrators. In November 2018, the AAA responded that a single arbitrator could be appointed to review the issue only by agreement of the

---

[3] Additionally, AAA Commercial Arbitration Rule R-16 (a) pertinently provides that "[i]f the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. . . ."

parties, but that appellants could raise the issue to the three-arbitrator panel once appointed; if the panel agreed that Rockmo's claim was less than $1 million, then any party could move for a reduction in the number of arbitrators hearing the case per Rule R-16 (b).[4] Nearly two months later, appellants again declined to pay the invoice for its portion of the arbitrators' fees. In response, Rockmo asked the AAA to sanction appellants pursuant to AAA rules.

In January 2019, the AAA informed the parties that it would review the sanctions request and questioned whether Rockmo would cover the total cost of arbitrators' fees so that the case could move forward, and then seek repayment from appellants as part of its claim. However, the AAA made clear that it "would prefer not to make this request." In February 2019, the AAA suspended the case because the

---

[4] This rule provides:

> (b) Any request for a change in the number of arbitrators as a result of an increase or decrease in the amount of a claim or a new or different claim must be made to the AAA and other parties to the arbitration no later than seven calendar days after receipt of the R-6 required notice of change of claim amount. If the parties are unable to agree with respect to the request for a change in the number of arbitrators, the AAA shall make the determination.

parties had failed to pay the required fees, provide a resolution to the funding issue, or respond to the AAA's request to reschedule the preliminary hearing.[5]

Six days later, Rockmo filed in the trial court a motion to reinstate the case or alternatively for contempt, contending that it had initiated arbitration proceedings as ordered by the trial court and had paid the filing fee and its half of the arbitrators' fees, but that arbitration had stalled due to appellants' refusal to pay its half of the fees or agree to a solution. The trial court issued an order reinstating the case in the Superior Court of Fulton County in November 2019. The court found that it had jurisdiction over the case and that appellants, by their conduct, had waived their right to arbitration. Appellants received a certificate of immediate review, and we granted their application for an interlocutory appeal.

1. *Jurisdiction.* As a threshold matter, appellants contend that the trial court did not have jurisdiction to hold that they waived their right to arbitration. According to appellants, this is a question for the arbitrator, not the court. We disagree.

In general, "courts decide issues of alleged conduct-based waiver of arbitration rights" unless "there is clear and unmistakable evidence" to the contrary, such as a

---

[5] Subsequently, the AAA informed the parties that the case had been placed in abeyance, and after one year in abeyance, the parties would be assessed a $500 fee.

"delegation provision" in the parties' agreement. (Citations and punctuation omitted.) *Brown v. RAC Acceptance East, LLC*, 303 Ga. 172, 175 (2) (a) (809 SE2d 801) (2018). See also *Cate v. Patterson*, 354 Ga. App. 108, 112 (2) (840 SE2d 489) (2020) ("in the absence of an agreement to the contrary, issues of substantive arbitrability are for a court to decide") (citation and punctuation omitted). Here, the parties' agreement contained no such provision, and the issue of whether appellants' conduct in refusing to pay the arbitrators' fee amounted to a waiver of their arbitration rights was a question properly decided by the trial court.[6]

2. *The trial court's findings of fact.* Appellants contend that the trial court's finding that the lengthy delay in the case is attributable to appellants is unsupported by the record and constitutes "reversible factual error." While we agree that the record

---

[6] We are unpersuaded that *Web IV, LLC v. Samples Constr., LLC*, 349 Ga. App. 607 (824 SE2d 107) (2019), demands a contrary result, as argued by appellants. In that case, we agreed with the trial court's conclusion that the arbitrator should decide the threshold question of whether the plaintiff waived its right to compel arbitration by failing to complete the dispute resolution process outlined in the parties' agreement, which was a condition precedent to demanding arbitration. Id. at 610-612 (1) (a). We reasoned that the question of whether the plaintiff waived its right to arbitration by failing to comply with the dispute resolution procedures set forth in the parties' agreement was "more accurately described as a procedural question that grows out of the agreement itself" rather than a question of conduct-based waiver. Id. at 610 (1) (a). As we pointed out, that "case is clearly distinguishable from those that have been described as posing questions of conduct-based waiver," such as the one at hand. Id.

does not support a finding that the entirety of the delay was caused by appellants, this was not the basis for the trial court's determination of waiver. Instead, the trial court found that appellants had

> insiste[d] that [Rockmo] "explain or justify" the damages it [was] seeking before the [c]ourt-ordered arbitration [could] take place, or otherwise "fix the situation" itself by agreeing to [appellants'] demands — despite the fact that it is [appellants] themselves who sought to enforce the arbitration agreement, which explicitly incorporates the AAA rules that [appellants] now seek to contravene.

The trial court then concluded that "said conduct is inconsistent with the right to arbitration. . . ." While the trial court also found that "the duration for which this case has been dragged out due to [appellants'] refusal to pay the required fees" had prejudiced Rockmo, this finding of prejudice was unnecessary and immaterial to the issue of whether appellants' *conduct* constituted a waiver of their right to arbitration.

3. *Waiver of right to arbitration.* Appellants argue that the trial court erred in concluding that they had waived their right to arbitration. Again, we disagree.

"Although Georgia has a clear public policy in favor of arbitration, it is well established that a party may waive its right to compel arbitration by acting in a manner which is inconsistent with the right of arbitration." (Citation and punctuation

9

omitted.) *Schinazi*, 351 Ga. App. at 156-157. Accord *Cate*, 354 Ga. App. at 114. "What constitutes a waiver of the right of arbitration depends on the facts of each case." *Schinazi*, 351 Ga. App. at 157. Generally, "in those cases where a waiver was held to have occurred, the party seeking to rely upon an arbitration clause did not promptly invoke or seek to enforce the clause." *Odion v. Avesis, Inc.*, 327 Ga. App. 443, 447 (3) (c) (759 SE2d 538) (2014). See, e.g., *Schinazi*, 351 Ga. App. at 159 (1) (party's "failure to invoke its right to arbitration and its decision, instead, to participate in almost five years of very costly litigation constituted conduct that was inconsistent with its right to arbitration and, thus, waived that right"); *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 674-675 (2) (583 SE2d 466) (2003) (party who chose not to immediately invoke its right to arbitrate but, instead, proceeded with litigation of the case up to actual trial, including sixteen months of discovery, waived right to arbitrate).

As far as this Court can find, the appellate courts of Georgia have not addressed the question of whether a party's failure to pay arbitration fees may amount to a waiver of its arbitration rights, but a number of other jurisdictions have answered this question in the affirmative. See *Bruzda v. Sonic Auto.*, No. 16-CV-02413-MEH, 2017 WL 5178967, at *3 (D. Colo., Jan. 23, 2017) (defendant's failure to pay its

arbitration fees barred it from asserting its rights under the arbitration agreement); *Cinel v. Barna*, 206 Cal. App. 4th 1383, 1390 (142 Cal.Rptr.3d 329) (2012) (where parties incorporated AAA rules into their agreement and rules provided that arbitration expenses would be borne equally by the parties, their refusal to reach an agreement as ordered by the arbitrator over the payment of fees, resulting in termination of arbitration, was a collective waiver of their right to arbitrate); *Freeman v. Smartpay Leasing, LLC*, No. 617CV938Orl31GJK, 2018 WL 467390, at *1 (M.D. Fla., Jan. 18, 2018) ("Having drafted an agreement requiring arbitration and designating JAMS as an acceptable forum, [Defendant] was obligated to comply with JAMS's procedures and to pay the initial filing fee. By refusing to pay the initial filing fee, Defendant has breached the Arbitration Agreement and waived its right to compel arbitration.") (footnote omitted), aff'd, *Freeman v. SmartPay Leasing, LLC*, 771 Fed. Appx. 926, 933 (III) (A) (11th Cir. 2019) (defendant acted inconsistently with its contractual right to arbitrate when it refused to pay the initial filing fee, as expressly required by the arbitration agreement). See also *Sanderson Farms, Inc. v. Gatlin*, 848 So2d 828, 838 (Miss. 2003) (plurality of court concluded that party's refusal to pay its one-half of the costs associated with filing and administrative fees as well as arbitrator fees prior to the scheduled arbitration amounted to an act

11

inconsistent with the right to arbitrate and thus a waiver of its right to arbitrate). But see *Lincoln Builders, Inc. v. Raintree Inv. Corp. Thirteen*, 866 So2d 326, 331 (La. Ct. App. 2nd Cir. 2004) (noting that Louisiana courts have only found waiver of arbitration in extreme cases and that even a delay in filing arbitration demand would not constitute a waiver, and holding that the failure to pay arbitration fees, by itself, does not constitute waiver of the arbitration agreement; proper course of action is to seek a court order directing that arbitration proceed as provided in the arbitration agreement). We agree with the reasoning of these cases and join the majority of jurisdictions holding that a party may waive its right to arbitration through its refusal to pay arbitration fees. But, we are mindful that what constitutes a waiver of the right to arbitration depends on the specific facts of each case.

Here, appellants sought to compel arbitration, but then refused to abide by the AAA's rules, which were incorporated into the parties' agreement, or to pay the required fees. Accepting appellants' position would allow a party to indefinitely postpone litigation and resolution of the case by refusing to cooperate with arbitration, or alternatively force the opposing party to shoulder the entirety of the

costs in order for arbitration to move forward.[7] Such conduct is inconsistent with appellants' right to arbitration, and under the circumstances presented in this case, we agree that it constituted a waiver of that right.

*Judgment affirmed. Dillard, P. J., and Rickman, J., concur*.

---

[7] We also note the contradictory nature of appellants' contention that an AAA arbitrator rather than the trial court should decide the issue when appellants have steadfastly refused to allow arbitrators to hear and resolve the issue in spite of the AAA proposing that very solution.